GREENERY REHABILITATION GROUP, INC., & another[1] *vs.*
JACK J. ANTARAMIAN & others.[2]

No. 92-P-1048.

Middlesex. November 18, 1993. - February 18, 1994.

Present: BROWN, KAPLAN, & LAURENCE, JJ.

*Real Property*, Sale. *Sale*, Real estate, Disclosure of defect. *Fraud. Contract*, Sale of real estate. *Evidence*, Extrinsic affecting writing. *Consumer Protection Act*, Businessman's claim. *Practice, Civil*, Amendment. *Corporation*, Corporate entity.

The explicit negotiated and agreed-to provisions of an agreement for the purchase and sale of real estate did not support a claim in a civil action brought by the buyers that the sellers made false statements upon which the buyers relied to their detriment, and the judge correctly granted summary judgment in favor of the sellers. [75-76] BROWN, J., concurring.

In a civil action the judge correctly granted the defendants' motion for summary judgment on the plaintiffs' claims of fraud for the defendants' failure to disclose the unsatisfactory financial condition of a tenant in a building the defendants sold the plaintiffs, where the plaintiffs did not demonstrate that the defendants knew the tenant would default on the lease [76-77]; moreover, the judge correctly determined that where the parties were sophisticated in real estate transactions there was no duty to disclose [77-78]. BROWN, J., concurring.

In the circumstances of a real estate transaction at arm's length between experienced business persons advised by counsel, summary judgment was correctly entered in favor of the defendant sellers on the buyers' claim of violation of G. L. c. 93A, § 2. [78-79] BROWN, J., concurring.

The judge in a civil action correctly denied the plaintiffs' motion for leave to amend the complaint to add a count charging personally a fifty percent shareholder in a defendant corporation where there was no plausible demonstration that the individual was an alter ego of the corporation. [79]

---

[1] 99-111 Chestnut Hill Avenue Corp.
[2] David E. Nassif and Denco Enterprises, Inc.

CIVIL ACTION commenced in the Superior Court Department on April 26, 1990.

Motions for summary judgment and for leave to amend the complaint were heard by *John J. O'Brien*, J.

*Molly Cochran* for the plaintiffs.

*Marjory D. Robertson* for David E. Nassif & another.

*Michael R. Gottfried* (*Robert S. Halpern* with him) for Jack J. Antaramian.

KAPLAN, J. On August 16, 1989, the 400 Centre Street Limited Partnership, as seller, entered into an agreement with Greenery Rehabilitation Group, Inc. (Greenery), as buyer, for the sale of an office building at 400 Centre Street, Newton. The 99-111 Chestnut Hill Avenue Corp. (Chestnut Hill) took an assignment of the rights of Greenery (its parent company) under the purchase and sale agreement, and closed the purchase of the building on September 15, 1989.

Northern Construction Corp. was a principal tenant of the building under a lease expiring by its terms on July 31, 1993. The lease was assigned to Chestnut Hill as new owner. On January 31, 1990, some four and a half months after the closing of the sale of the building, Northern Construction, stating that because of economic conditions it could no longer afford the space, defaulted under its lease by failing to make a payment when due and vacated the premises.

On April 26, 1990, Greenery and Chestnut Hill commenced the present action against Northern Construction; Denco Enterprises, Inc. (Denco), and Jack J. Antaramian, the two general partners of the 400 Centre Street Limited Partnership; and David E. Nassif, president of Denco.[3] The amended complaint, filed on July 12, 1990, in count I claimed against Northern Construction for the balance due under the lease, in count II against the other defendants for damages for fraud, and in count III against them for damages pursuant to G. L. c. 93A.

There was an agreement for judgment against Northern Construction.

---

[3]Arthur Amadei, the broker in the sale, was also named as a defendant, but he was dismissed from the action by stipulation.

The other defendants moved (Denco and Nassif jointly, Antaramian separately) for summary judgment dismissing the action. Upon the record made by the parties, including deposition testimony, a judge of the Superior Court allowed the motions with explanatory memoranda, and final judgment for these defendants entered on April 10, 1992. The plaintiffs appeal from the judgment. They also seek review of the judge's denial of their motion further to amend their complaint to add a count against Antaramian by which he, a fifty percent shareholder of Northern Construction, would be charged personally for the default of that company on a theory of "piercing the corporate veil."

1. *Regarding the "fraud" claim.* a. *Statements made by seller.* Viewing the evidence with intendments favoring the parties opposing the summary judgment,[4] we accept that, during extended negotiations leading to the sale of the property, Nassif, representing the seller, in the course of conversation with Gerard Martin or George Ferencik, representing the buyer, said that the tenants were "solid"; "good as gold," except for the Freesia restaurant, which was in default; the other two tenants were "in good standing" with "rents paid right up to date"; Northern Construction "was there as a long term tenant." The last three quoted phrases, which were relatively specific, were accurate. The other epithets were so general as to amount to puffery; it would be very hard, even with the intendments favoring the plaintiffs, to raise from them any implications of falsity upon which there could have been reasonable reliance.

However, regardless of how the statements are viewed, any claim based on them is eliminated by the terms of the purchase agreement itself: so the judge correctly held. It is

---

[4]We have been mindful throughout of the standard to be applied upon a motion for summary judgment made against the party who bears the burden of proof (here the plaintiffs). The materials tendered on the motion should indicate that proof supporting the given issue is not likely to be forthcoming at trial; the party with the burden must then produce evidence demonstrating that there is a genuine issue for trial. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-716 (1991); *Marenghi* v. *Mobil Oil Corp.*, 416 Mass. 643, 646-647 (1993).

clear beyond doubt that the question of the possible survival, beyond the date of the formal agreement, of any antecedent representations or warranties was itself negotiated seriously and at length; Martin's uncontroverted testimony on deposition is conclusive on the point. The buyer was urging that the agreement should provide explicitly for survival (or, perhaps, should not negate survival); the seller was resisting any provision for survival. The matter was compromised, as will be seen, by observing the particular places in the agreement where survival is agreed to. As to the subject of tenants' leases, we consult par. 14, entitled "Representations and Warranties, Leases, Etc." Subparagraph 14.2 states in part that the buyer has examined the listed leases and is familiar with their terms and accepts them; the seller represents that these leases are in full force. (There is a special provision regarding the restaurant tenant.) As to any other representations (prior or contemporaneous) that may have been made about matters not specifically excepted — leases are not excepted — subpar. 14.1, reinforced by par. 20 ("Acceptance of the Deed"), denies survival to them and makes them unavailable as any basis of liability. (The pertinent parts of the texts of pars. 14.1 and 20 are reproduced as an appendix hereto.)

The provisions of subpar. 14.1 and par. 20 were not "boilerplate" but, as noted, were negotiated and agreed to and are to be respected and enforced according to their terms. We think the distinction is recognized and acknowledged in the recent case of *McEvoy Travel Bureau, Inc.* v. *Norton Co.,* 408 Mass. 704, 710-712 (1990). See also *Turner* v. *Johnson & Johnson,* 809 F.2d 90, 95-98 (1st Cir. 1986); *Plumer* v. *Luce,* 310 Mass. 789, 803-805 (1942), with which compare *Bates* v. *Southgate,* 308 Mass. 170, 173 (1941), all discussed by the court in *McEvoy.*

b. *Alleged nondisclosure.* The plaintiffs charged, to quote from count II, that Antaramian and Nassif "knew in September 1989 . . . that Northern Construction was financially incapable of meeting its obligations under the Lease," that they were under a duty to disclose this to the buyer, and

that, failing the disclosure, there was liability to the buyer in common law fraud.

The plaintiffs attempt to build up an impression of such knowledge from an assortment of details, such as the fact that Northern Construction on occasions prior to the sale remitted rent to the then owner by means of a check of an affiliated company, that it attempted to sublet part of the premises shortly after the sale, etc. We think the details, taken together, do not make out a genuine issue for trial regarding the claimed knowledge (see note 4, *supra*).

But at all events the judge was right to say there was no duty to disclose. This was not a case of a partial disclosure that is deceptive unless the whole story is told. See *Maxwell* v. *Ratcliffe*, 356 Mass. 560, 562-563 (1969). For purposes of argument only, we may assume a case where a seller knows of a weakness in the subject of the sale and does not notify the buyer of it. Such nondisclosure does not amount to fraud and is not a conventional tort of any kind. The classic expression of this view is by Justice Qua in *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677 (1942); the nub of his opinion (at 678-679) is quoted in the margin.[5] See also *Kannavos* v. *Annino*, 356 Mass. 42, 48 (1969); *Nei* v. *Burley*, 388 Mass.

---

[5]"There is no allegation of any false statement or representation, or of the uttering of a half truth which may be tantamount to a falsehood. There is no intimation that the defendant by any means prevented the plaintiff from acquiring information as to the condition of the house. There is nothing to show any fiduciary relation between the parties, or that the plaintiff stood in a position of confidence toward or dependence upon the defendant. So far as appears the parties made a business deal at arm's length. The charge is concealment and nothing more; and it is concealment in the simple sense of mere failure to reveal, with nothing to show any peculiar duty to speak. The characterization of the concealment as false and fraudulent of course adds nothing in the absence of further allegations of fact. *Province Securities Corp.* v. *Maryland Casualty Co.*, 269 Mass. 75, 92 [1929].

"If this defendant is liable on this declaration every seller is liable who fails to disclose any nonapparent defect known to him in the subject of the sale which materially reduces its value and which the buyer fails to discover. Similarly it would seem that every buyer would be liable who fails to disclose any nonapparent virtue known to him in the subject of the purchase which materially enhances its value and of which the seller is ignorant. See *Goodwin* v. *Agassiz*, 283 Mass. 358 [1933]. The law has not

307, 310 (1983); *Solomon* v. *Birger*, 19 Mass. App. Ct. 634, 639 (1985); *Spencer Cos.* v. *Chase Manhattan Bank, N.A.*, 81 B. R. 194, 202 (Bankr. D. Mass. 1987). We note that the nondisclosure question is revisited in Restatement (Second) of Torts § 551 (1976). The Restatement concludes that non-disclosure can be actionable only where there is a "duty" to disclose, and a duty arises only in a number of discrete situations described in § 551. There is no such duty in the present case. We add that the *Swinton* position is especially cogent in the present circumstances: here was a negotiation and agreement between sophisticated businessmen active in real estate transactions; they were represented by counsel; the buyers made no credit check or inquiry of their own into the financial condition of Northern Construction, nor did they request the seller to produce such information; they did not request a guarantee of the Northern Construction lease but now seek to exact what in effect would be a guarantee.

2. *Chapter 93A claim.* One can violate § 2 of G. L. c. 93A, as interpreted in 940 Code Mass. Regs. § 3.16(2) (1986), by failing to disclose to a buyer a fact that might have influenced the buyer to refrain from the purchase. But "[t]here is no liability for failing to disclose what a person does not know." *Underwood* v. *Risman*, 414 Mass. 96, 100 (1993). As we have already suggested under point 1b above, the judge would have been wrong to impute to the defendants knowledge at the time of the sale that Northern Construction, which had met its obligations under the lease to that date, would soon go into default. Indeed, a predictive insight about the future operations of a going business in relation to changing market conditions would hardly fit under the heading of "fact" and would seem at most in the nature of opinion.

More generally, in the circumstances of a transaction at arm's length between experienced, worldly-wise businessmen advised by counsel, we find nothing chargeable to the defendants that sank to the level of "rascality" made actionable by

yet, we believe, reached the point of imposing upon the frailties of human nature a standard so idealistic as this."

§ 11 of the statute regarding dealings between businessmen (distinguished from the consumers' § 9). See *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109-110 (1979); *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass. 703, 710-711 (1992); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979).

3. *Further amendment of the complaint.* The plaintiffs moved for leave to amend the complaint to add a count charging Antaramian personally for damages for breach of the lease of which Northern Construction was the named and responsible lessee. Such disregard of the separate corporate identity is reserved for "rare particular situations to prevent gross inequity." *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968). The plaintiffs made no credible showing that this could be the rare case. See *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 732-737 (1991). The plaintiffs knew that as buyers they were succeeding to a lease with a corporation and no other. They were short of any plausible demonstration that the individual as a fifty percent shareholder was an alter ego of the corporation. As regards "inequity," the absence of actionable fraud or unfair or deceptive conduct as charged under counts II and III foreshadowed a similar result under the proposed new count.[6] Also bearing on a claim of "inequity" was the fact that the plaintiffs took no pains to investigate the corporation and were conspicuously unconcerned about it. On the whole we think the judge did not abuse his discretion in denying the amendment, which appears to have had no role except to threaten to complicate and extend the litigation and thus to exert practical pressure on the opposition.[7]

*Judgment affirmed.*

---

[6]We observe that if count II or III had succeeded, the individual Antaramian would be personally liable thereunder.

[7]It may be noted that the motion was made on March 18, 1991, six months after the tracking order deadline for such motions and one month before the time set for the final pretrial conference. The judge could consider the delinquency although his power remained to allow an amendment

APPENDIX TO THE OPINION OF THE COURT.

"14.1 . . . Seller shall not be liable or bound in any way for any verbal or written statements, representations, or information pertaining to the Premises furnished by any real estate broker or agent or any agent or employee of Seller, or any other person. It is understood and agreed that all prior and contemporaneous representations, statements, understandings and agreements, oral or written, between the parties are merged in this Agreement, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying on any statement or representation not embodied in this Agreement made by the other."

"20. The acceptance of the Deed by Buyer on the Closing Date shall be deemed full performance and discharge of each and every agreement and obligation on the part of Seller hereunder to be performed. Any and all representations and warranties of Seller contained in this Agreement shall not survive the Closing Date and the delivery of the Deed, and shall be merged in the delivery of the Deed, unless otherwise expressly and specifically provided in this Agreement."

BROWN, J. (concurring). I am in total accord with the result. The analysis of the merits, with which I have no substantive quarrel, perhaps manifests too much concern for these "worldly-wise businessmen advised by counsel." The buyers may have been careless, indifferent, or merely over-eager to close the deal during the negotiating process, but any such manifestation of lack of business acumen does not entitle them to seek relief through the judicial process. The defendants' conduct, such as it was, did not sink to the level of rascality made actionable by c. 93A, § 11. Succinctly put, the curtain was up; the stage and the actors were amply lit; if the plaintiffs failed to see the play, it was because their eyes were not open.

under Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974), in a proper case. See *Sullivan* v. *Iantosca,* 409 Mass. 796, 801-802 (1991).