TOWNSENDS, INC. *vs.* LINDA BEAUPRE, executrix.[1]

No. 96-P-1837.

Suffolk. February 11, 1998. - September 17, 1999.

Present: KASS, SMITH, & FLANNERY, JJ.[2]

*Corporation,* Liability of officers. *Fraud. Contract,* Misrepresentation. *Consumer Protection Act,* Unfair or deceptive act.

In an action alleging misrepresentation and violation of G. L. c. 93A, § 11, brought against a corporation and against an individual who was its president, treasurer, and sole shareholder, nothing on the record of the jury-waived trial established that the individual defendant had made misrepresentations to the plaintiff or that he had committed any unfair or deceptive act. [751-755]

CIVIL ACTION commenced in the Superior Court Department on November 29, 1993.

The case was heard by *John C. Cratsley,* J.

*Jeffrey S. Baker* for the plaintiff.

*Danielle E. deBenedictis* for the defendant.

SMITH, J. Townsends, Inc. (Townsends), brought an action in the Superior Court against Isaac Karchakian (Karchakian), Century Packing Co., Inc. (Century Packing), and Kennebunk Farms, Inc. (Kennebunk Farms).[3] Townsends's complaint alleged separate counts of breach of contract, misrepresentation, and violations of G. L. c. 93A, § 11. After a jury-waived trial the judge found against Century Packing only on the misrepresentation count, and in favor of Karchakian on all counts.

[1] Of the estate of Isaac Karchakian.

[2] This case was argued before Justices Kass, Smith, and Flannery. Following the death of Justice Flannery, Justice Spina was added to the panel and participated in this decision.

[3] The counts against Kennebunk Farms were dismissed prior to trial. Any reference in this opinion to "both defendants" refers to Karchakian and Century Packing.

Townsends has appealed the entry of judgment in favor of Karchakian on the misrepresentation and c. 93A claims.[4] Karchakian died after the trial, and the judge allowed the executrix of his estate, Linda Beaupre, to substitute for him.[5]

The judge's findings of fact are not challenged by Townsends.[6] They are, in a summary form, as follows. Townsends, a Delaware corporation, is a large poultry producer. Karchakian was the president, treasurer, and sole shareholder of Century Packing which, prior to 1992, distributed wholesale beef, pork, lamb, and veal to retail businesses in the greater Boston area.

Century Packing rented the building in which it operated its business from the I & R Realty Trust. The Isaac Karchakian Estate Planning Trust of 1974 (1974 Trust) was the beneficiary of the I & R Realty Trust. Karchakian was the sole trustee and beneficiary of the 1974 Trust.

During the summer of 1992, Century Packing phased out its lamb and veal divisions and purchased a poultry supplier, Quarex of New England (Quarex). Prior to its purchase, Quarex had a credit arrangement with Townsends. Hoping to continue that relationship, Century Packing submitted a credit application and a financial statement to David Burton, Townsends's assistant treasurer. USTrust, Century Packing's bank, was among the references provided to Townsends. Karchakian signed the application.

Satisfied with Century Packing's credit profile, Townsends extended $400,000 in credit to the company in September, 1992. Of that amount, $200,000 was secured by a letter of credit issued by USTrust and $200,000 was unsecured.

In July, 1993, Century Packing fell behind in its payments to Townsends. At that point, Burton arranged a meeting with Karchakian to discuss the problem.

On August 3, 1993, Burton met with Karchakian and two other employees of Century Packing. They discussed Century Packing's finances. Karchakian stated that Century Packing was in good financial condition, but its cash flow was slow and business could have been better. After some discussion concern-

---

[4]Century Packing was placed into involuntary bankruptcy in January, 1994, and is not a party in this appeal.

[5]This opinion, however, will continue to make reference to the defendant as Karchakian.

[6]The case comes to us without a transcript. Thus, there is no basis for challenging the judge's findings of fact.

ing the performances of Century Packing's different divisions, Burton requested an updated financial statement, which Karchakian agreed to send.

Several weeks after the August 3 meeting, Burton received a financial statement for the thirty-five-week period ending July 2, 1993. The statement had been prepared by Harvey Gershlak, Century Packing's accountant. Attached to it was a cover letter signed by Gershlak which stated, among other things, that the financial statement presented information that was the representation of management, that he had not audited or reviewed the accompanying statement, and that he did not express any opinion or any other form of assurance with regard to the contents of the statement. Gershlak sent the financial statement to Karchakian for his approval. Karchakian was the only person who compiled and maintained the financial information for each Century Packing division and, therefore, only Karchakian knew the overall financial condition of Century Packing. Karchakian approved the statement and had it sent to Burton. Critical to our decision in this case is the absence of any finding by the judge that Gershlak's letter or the financial statement accompanying the letter was prepared and presented in accordance with generally accepted accounting principles.

The financial statement carried as assets a number of accounts receivable of doubtful collectability. About three percent of the total accounts receivable carried as assets were (1) in excess of thirty months old, (2) related to companies that were in bankruptcy, or (3) related to companies that were no longer in business. Another seven percent of those listed were more than thirty-five days old.

The financial statement forwarded to Townsends did not mention that on September 14, 1992, Century Packing guaranteed a loan from USTrust to the I & R Realty Trust. It also did not disclose that Century Packing was paying rent to the I & R Realty Trust.

On August 11 (one week after the meeting with Burton and before the financial statement was sent), Michael McGinn, the vice president of USTrust who was in charge of the Century Packing account, met with Karchakian. Because of recent over advances in its borrowing from USTrust, McGinn had questions regarding Century Packing's financial condition.

Karchakian gave McGinn substantially the same answers he had given Burton. McGinn asked Karchakian to give Century

Packing $1,000,000 in capital to "work down Century Packing's over advances with USTrust." Karchakian was unable to raise the capital.

On September 15, 1993, USTrust restructured Century Packing's loan, increasing its credit ceiling from $4,000,000 to $7,500,000. The document memorializing the restructuring also showed that Century Packing was paying Karchakian an annual salary of $400,000. Those facts were not disclosed to Townsends.

Upon reviewing the financial statement Townsends had received in August, 1993, Burton noticed a decrease of $500,000 in equity as compared to 1992. He also noticed a large increase in Century Packing's indebtedness to USTrust. Burton then asked Century Packing to supply an additional letter of credit for $100,000. Karchakian refused. As a result, in early September, 1993, Burton instructed Townsends's sales department to limit Century Packing's daily purchases. Townsends's goal was to limit its unsecured credit to $100,000.

Faced with continuing financial deterioration, Century Packing failed to make payments on poultry shipped by Townsends between September 29, 1993, and October 19, 1993. As a result, on October 22, 1993, Townsends stopped all shipments to Century Packing. On November 4, 1993, Townsends exercised its $200,000 letter of credit with USTrust, but there remained an unpaid balance of $157,000 owed to Townsends by Century Packing. In January, 1994, Century Packing was forced into bankruptcy.

The judge identified four false representations in the financial statement sent to Townsends. The first concerned the failure to disclose that Century Packing paid rent to the I & R Realty Trust, of which the 1974 Trust was the sole beneficiary. The judge held that the payment of the rent was a related party transaction which, under sound accounting principles, should have been disclosed. The second misrepresentation was a failure to disclose that Century Packing had guaranteed a loan from USTrust to the I & R Realty Trust. The judge ruled that the guaranty was a contingent liability, and sound accounting principles required that the guaranty be disclosed on the financial statement. The third misrepresentation as the judge saw it arose out of the financial statement disclosure that Century Packing owed money to USTrust; that disclosure created an ongoing duty, according to the judge, to inform

Townsends of the restructuring of the loan on September 15, 1993. The fourth misrepresentation cited by the judge was that the financial statement falsely misrepresented Century Packing's accounts receivable, not as to their existence, but failing to disclose the "dubious collectability" of about three percent of them.

The judge ruled that Century Packing was responsible for the misrepresentations. After considering all of the appropriate factors, see *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 732-733 (1991), the judge decided not to pierce the corporate veil and hold Karchakian personally liable.

On appeal, Townsends claims that the judge committed error in entering judgment for Karchakian after finding that he had made misrepresentations in the financial statement submitted to Townsends. In the same respect, Townsends also faults the judge for employing the "piercing the corporate veil" analysis in determining that Karchakian was not personally liable for his misrepresentations. Finally, Townsends argues that the judge committed error in ruling that Karchakian did not violate G. L. c. 93A.

Contrary to Townsends's claim, the judge did not make any findings that Karchakian made misrepresentations in the financial statement. We note that on two occasions in his lengthy memorandum the judge did refer to "the defendants" as having made fraudulent misrepresentations. However, throughout his memorandum he also repeatedly specifically referred to Century Packing as the maker of the misrepresentations, not Karchakian. In view of his conclusion in this matter, we consider the reference to "the defendants" as being nothing more than the slip of the finger on the computer keyboard.

Nevertheless our analysis does not stop here. The judge refused to hold Karchakian personally liable for the misrepresentations committed by Century Packing, based on his ruling that Karchakian had acted in his capacity as an officer of Century Packing, and that, in the circumstances presented, it would be improper to pierce the corporate veil. It is not necessary in all instances, however, to pierce the corporate veil in order to hold a corporate officer liable for a corporation's torts.

A corporate officer is personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving, or ratifying the act that injured the aggrieved party.

*Refrigeration Discount Corp.* v. *Catino*, 330 Mass. 230, 235 (1953) (one who was president, director, and general manager of a corporation and who engaged in conversion of property could be held personally liable even though he acted for benefit of corporation). See *Bond Leather Co.* v. *Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 938 (1st Cir. 1985).

Karchakian was the president, sole stockholder, and only person aware of the complete financial condition of the corporation. He alone provided the information used by the accountant in compiling the financial statement. He also approved the statement before it was sent to Townsends. In these circumstances, Karchakian cannot hide behind the corporation. See *Refrigeration Discount Corp.* v. *Catino, supra* at 234-235 (corporate officer personally liable for a tort in which he participated without the necessity of employing piercing the corporate veil analysis). We must therefore examine the individual misrepresentations identified by the judge in order to determine whether Townsends carried its burden of showing the necessary elements of actionable misrepresentation with respect to Karchakian.

1. *The false misrepresentations claim.* The judge found that the failure to report the payment of rent to the I & R Realty Trust was a violation of financial accounting standards requiring disclosure in financial statements of related party transactions. Similarly, the judge ruled that the failure to disclose Century Packing's guarantee of the loan to the trust was a violation of financial accounting standards requiring disclosure of contingent liabilities. However, in making the findings, the judge ignored the fact that the financial statement had not been audited by the accountant. Assuming that these omissions qualified as false statements under Restatement (Second) of Torts § 551 (1977),[7] see *Wolf* v. *Prudential-Bache Sec., Inc.*, 41 Mass. App. Ct. 474, 476 (1996), Townsends still had the burden of proving the other elements of a misrepresentation claim against Karchakian.

---

[7] "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information that he knows will make untrue or mislead-

Specifically, Townsends was required to prove that Karchakian knowingly, recklessly, or at least negligently failed to include the information required by the accounting standards. *Acushnet Fed. Credit Union* v. *Roderick*, 26 Mass. App. Ct. 604, 605-606 (1988). The judge made no finding or ruling on this point, and there is nothing on the limited record presented to us on appeal establishing that a reasonably competent business executive ought to be familiar with the standards of the financial accounting profession. There is also nothing in the record indicating that Karchakian induced the accountant to omit the relevant information from the financial statement. It would have been entirely reasonable for Karchakian to rely on the accountant[8] to assemble a financial statement that complied with all relevant accounting standards. In regard to these two omissions, we hold that Karchakian was not personally liable. Contrast *Acushnet Fed. Credit Union* v. *Roderick, supra* at 606 (where a jury might have found that an agent of Acushnet was at least negligent in misrepresenting material facts, jury instructions that only discussed knowing misrepresentation were a ground for reversal and a new trial).

Next, the judge found that ten percent of the accounts receivable listed as assets of Century Packing in the financial statement were of dubious collectability. Without discussion, the trial judge ruled that listing these accounts receivable as assets of the corporation was a fraudulent misrepresentation because it suggested that the accounts were collectible.

The judge, however, also credited evidence that it was Karchakian's practice to write off accounts receivable he determined to be uncollectible at the end of Century Packing's fiscal year, namely the last week of October. In October, 1993, several weeks after the July, 1993, financial statement was sent to Townsends, Karchakian followed this practice by writing off $228,000 in uncollectible accounts receivable. The judge noted that there was conflicting testimony at trial about what the industry practice was for dealing with aging accounts receivable. Other than this reference to conflicting testimony, there is no evidence in the record provided on appeal that suggests that

---

ing a previous representation that when made was true or believed to be so
. . . ."

Restatement (Second) of Torts § 551.

[8]From this record, we do not know if Gershlak was an independent accountant or a corporate accountant.

Karchakian's approach to this problem was improper, unusual, or negligent. Thus, the judge's subsidiary findings do not support his conclusion that this practice constituted a false representation.

Even if the practice did amount to a false representation, there is no basis in the record for a finding that Karchakian was even negligent in failing to write off these bad debts prior to the July 2, 1993, financial statement. The judge acknowledged that this practice was equally likely to be an error of business judgment as it was evidence of an intent to deceive. Without, at the very least, a finding that Karchakian *should have known* that the aging accounts receivable should not have been reported as assets of the corporation, we do not impose liability for misrepresentation. See *Acushnet Fed. Credit Union* v. *Roderick, supra* at 605 (actionable misrepresentation requires a showing that the purported deceiver knew that the representation was false, or could have discovered the falsity "through a modicum of diligence").

The judge also found that Century Packing's failure to report an increase in a line of credit it had open with USTrust was a misrepresentation. Century Packing had disclosed on the financial statement that it had a $4,000,000 line of credit with USTrust. On September 15, 1993, USTrust raised this line of credit to $7,500,000. The judge ruled that this increase represented "new information" that rendered Century Packing's disclosure of the existence of the credit line in the financial statement "untrue or misleading." Restatement (Second) of Torts § 551(2)(c). Consequently, the judge ruled that the failure to disclose the increase to Townsends was a false representation of material fact. See Restatement (Second) of Torts § 551(1).

This ruling is not supported by the record. There was no finding by the judge that Century Packing ever *used* the increased line of credit provided by USTrust. An increase in a credit ceiling is not, by itself, a change in the financial position of the corporation. The increase only gave Century Packing the *ability* to increase its indebtedness to USTrust. Since there was no finding of a material change in Century Packing's financial condition, the increase in the credit line did not render the earlier disclosure in the financial statement deceptive. *Greenery Rehabilitation Group* v. *Antaramian*, 36 Mass. App. Ct. 73, 77 (1994). Thus, there was no duty to disclose the change to Townsends. While Townsends might have wanted to know

that Century Packing had nearly doubled its credit line with USTrust, there is no general duty to disclose such information. *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678-679 (1942). *Greenery Rehabilitation Group* v. *Antaramian, supra* at 77. *Wolf* v. *Prudential-Bache Sec., Inc., supra* at 476.

2. *The c. 93A claim.* Because we have held that Karchakian was not even negligent in approving the financial statement sent to Townsends, we hold that, on this record, Karchakian did not commit an unfair or deceptive act that would subject him to liability under G. L. c. 93A, § 11. See *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 287-288 (1993) (even where the jury found that the defendant had engaged in negligent misrepresentation, the trial judge was warranted in finding that the conduct did not rise to the level of unfair or deceptive acts).

Because we hold that there were no misrepresentations, the judgment in favor of Karchakian is affirmed.

*So ordered.*