Staffier-Holtz, Nancy, J.

INTRODUCTION

The Pizza Zone, Inc., and Peter Drake sued Dam Realty, LLC and Moshe Attias, claiming fraud, violation of G.L.ch. 93A, and breach of contract. The defendants have moved for summary judgment on all counts. After a hearing, for the reasons set forth below, that motion is ALLOWED.

BACKGROUND

This dispute centers around a commercial lease entered into by the parties, for premises in Milford, MA (the “Town”) located within a shopping center and intended to be used as a pizza restaurant. The parties disagree as to their respective duties and obligations regarding the construction of a grease trap on the premises.
In April 2002, the defendants, Dam Realty, LLC (“Darn”), and its manager, Moshe Attias, purchased land and began development on what is now the Nathaniel Plaza shopping center. Dam hired a civil engineer, Michael Dean, of Guerriere & Halnon, Inc., to prepare a site plan and to secure necessary permits from the Town. (Deposition of Michael Dean, 9:5-9:25, 11:13-11:15 (May 24, 2007).) Mr. Dean’s Site Plan outlined two separate buildings on the property, a front building and a rear building, both of which were designed for retail tenants only. The Town Planning Board approved the Site Plan on April 1, 2003. (See Site Plan.) At the suggestion of Wayne DeRosa, a construction engineer employed by Darn, Mr. Attias requested that Mr. Dean add grease traps to the Site Plan, and secure the necessary permits.
The Milford Sewer Department Regulations define “grease trap” as “an exterior watertight structure in which grease is separated from wastewater.” (Rules and Regulations of the Milford Sewer Department, Art. I, §1 (2004).) Such grease traps “shall be provided for all restaurants, food establishments, and similar establishments or when, in the opinion of the Director, they are necessary . . .” (Id. at Art. V, §8(a).) “Exterior grease traps shall have a minimum depth of 4 feet and a minimum capacity of 1000 gallons . . .” (Id. at Art. V, §8(b).)
Upon receiving Mr. Attias’s request, Mr. Dean added two 1,000 gallon grease traps to the Site Plan, one for each of the two buildings. The Town Sewer Department approved the addition on June 10, 2003. (See Amended Site Plan.) After evaluating the potential construction costs of installing the two grease traps, Mr. Attias decided to install just one grease trap, for the “front” building; he arrived at this decision since there were no prospective tenants at the time, and Town regulations did not require the installation of both grease traps. (Deposition of Moshe Attias, 102:24-103:15 (May 17, 2007).)
Construction of the property concluded in early 2004, and the Town issued occupancy permits on June 14, 2004. (See Occupancy Permit.) The first two tenants were a sandwich shop called Jersey Mike’s Subs (“Jersey Mike’s”), and a catering company called Dream Dinners, who entered into leases for property in the front building on February 14, 2004, and April 1, 2004, respectively. (Affidavit of Moshe Attias, pars. 5-6 (June 25, 2007).) During its construction, Jersey Mike’s contacted Mr. Attias to report that the Town required it to have a grease trap. Mr. Attias told Jersey Mike’s that it could hook up its plumbing system to the existing grease trap for the front building. (Depo. of Attias, 171:2-171:12.) Similarly, John Mainini, the Town’s Wastewater Treatment Facility Superintendent — and the individual in charge of ensuring Attias’s compliance with Town rules and regulations — told Mr. Attias that Dream Dinners might also need a grease trap. (Affidavit of Mainini, pars. 2-3 (June 25, 2007).) Attias relayed this information to Dream Dinners and advised them to call Mr. Mainini. (Depo. of Attias, 113:23-114:8.)
Subsequently, the broker for the property was contacted by the plaintiffs in the present case, The Pizza Zone, Inc. (“Pizza Zone”), and its sole stockholder, director and officer, Peter Drake. After several visits to the property, Mr. Drake began negotiating with Dam for a lease of Unit 12 at the Plaza (the “premises”), located in the rear building. (Deposition of Peter Drake, 13:11-14:4 (May 15, 2007).) The parties, who were both represented by legal counsel, continued over a period of several months, during which Mr. Drake and Mr. Attias conversed many times. (Id. at 13:17-14:9.) Before negotiations had concluded, Mr. Attias claims he gave Mr. Drake the phone number of Mr. Mainini, and told Mr. Drake that he should call him to ascertain the grease trap requirements. (Depo. of Attias, 114:19-115:6.) Mr. Drake claims this conversation never occurred. (Depo. of Drake, 22:12-22:23.)
On June 10, 2004, the parties entered into a lease of the premises (the “Lease”), for a period of five years, with an annual rent of $24,642.00 for the first two years, rising to $27,380.00 for the last three years. *674 (See Lease, par. 3 (June 10, 2004).) During the following week, Pizza Zone began construction at the premises. (Pizza Zone’s Response No. 15 to First Set of Interrogatories (Nov. 23, 2004).) As part of its construction, Pizza Zone built a grease trap inside the premises. [Id. at No. 8.) In late August 2004, the plumber for the premises, Mike Dean, relayed to Mr. Drake a conversation with Mr. Attias suggesting Mr. Drake might need to construct an additional grease trap. (Depo. of Drake, 28:19-29:23.) Mr. Drake then spoke to Mr. Attias, who told him to contact Mr. Mainini at the Sewer Department. (Id. at 30:6-31:3.) While speaking with Mr. Mainini, Mr. Drake learned that he was required to construct an exterior grease trap, i.e. one installed in the common area of the parking lot. (Id. at 31:6-31:8.)
Mr. Drake and Mr. Attias proceeded to have several conversations as to which of the two parties was responsible for bearing the cost of installing the exterior grease trap. (Id. at 31:23-32:23.) Mr. Drake obtained multiple estimates for installing the grease trap, which ranged from approximately $20,000.00 to $25,000.00. (Id. at 33:22-34:3.) Pizza Zone demanded, by letter, that Darn install the grease trap. (See Letter from Atiy. Jeffrey Williams to Darn (Aug. 24, 2004).) In a response letter, Darn stated that Pizza Zone had not paid rent for September 2004, and was in default of the lease for failing to obtain Darn’s approval of their work — for example, failing to produce sufficient architectural plans. (See Letter from Atty. Donald Bloch to Pizza Zone (Sept. 1, 2004).) Pizza Zone issued a rent check on September 2, 2004, and exchanged certain floor plans with Darn. Pizza Zone then demanded a Notice of Substantial Completion from Darn, pursuant to paragraph 7(B) of the Lease.[1] Pizza Zone claimed the Lease had not commenced, since it could not obtain a Certificate of Occupancy from the Town due to Dam’s failure to install an exterior grease trap. Darn did not deliver to Pizza Zone the Notice of Substantial Compliance, and notified Pizza Zone that the Lease’s commencement date was August 9,2004, as indicated in the contract. (See Lease, par. 2.) On September 23, 2004, Dam gave notice to Pizza Zone that it was terminating the Lease because of Pizza Zone’s failure to cure its default. (See Letter from Donald Bloch to Pizza Zone (Sept. 23, 2004).) Pizza Zone immediately left the premises. (Depo. of Drake, 42:12-42:18.)
On September 27, 2004, Pizza Zone and Mr. Drake brought the present action under the following causes of action: (1) fraud, (2) violation of Chapter 93A, (3) breach of contract for failing to install the grease trap. Darn and Attias counter-claimed for damages in the amount of $133,324.65, stemming from Pizza Zone’s alleged default, including unpaid rent and property damage.
Certain paragraphs in the Lease, dealing with the parties’ obligations regarding the grease trap, are particularly relevant to the present dispute:
Paragraph 9(E) states, “Tenant shall also provide and install in the waste water lines running from the kitchen of the demised premises a suitable grease trap.”
Paragraph 9(B) provides, in relevant part, “Tenants will procure all licenses and permits which may be required for any use made of the demised premises.”
Paragraph 10(E) states, in relevant part, “Tenant agrees that it will procure all necessaiy permits, licenses and other governmental approvals . . ., before beginning the conduct of business in the demised premises ...”
Paragraph 25(F) provides, “Wherever in this lease provision is made for the doing of any act by any person it is understood and agreed that such act shall be done by such person at its own cost and expense, unless a contrary intent is expressed.”

DISCUSSION

A. Summary Judgment Standard

A motion for summary judgment is granted when “the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). As the moving party, Darn “has the burden of affirmatively demonstrating the absence of a genuine issue of material fact on every relevant issue, even if [Dam] would not have the burden on an issue if the case were to go to trial.” Sullivan v. Liberty Mutual Insurance Co., 444 Mass. 34, 39 (2005) (quoting Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997)). Dam may satisfy its burden by showing that the plaintiffs “[have] no reasonable expectation of proving an essential element of the case at trial.” Sullivan, 444 Mass. at 39.

B. Fraudulent Nondisclosure

Pizza Zone first contends that Dam and Mr. Attias (together, “Dam”) committed fraud by failing to disclose knowledge that Pizza Zone might be required to construct an exterior grease trap. Due to this fraudulent nondisclosure, Pizza Zone argues, it could not satisfy the Town’s grease trap requirement. Pizza Zone’s claim fails as a matter of law, however, because Darn had no duty to disclose this information.
To win a claim for fraud, Pizza Zone must prove the following: (1) Darn made a false representation of material fact; (2) the false representation induced Pizza Zone to act; and (3) Pizza Zone relied on the false representation to its detriment. See Ravosa v. Zais, 40 Mass.App.Ct. 47, 52 (1996). In business transactions, failure to disclose information is actionable only when a duty to disclose exists, such as where there is a fiduciary relationship. Greenery Rehabilitation Group, *675 Inc. v. Antamarian, 36 Mass.App.Ct. 73, 77-78 (1994). Significantly, not every instance of nondisclosure amounts to fraud, such as “where a seller knows of a weakness in the subject of the sale and does not notify the buyer of it.” Id. at 77.
Here, there is no evidence that Darn owed a fiduciary duty toward Pizza Zone. In addition, Pizza Zone did not trigger a duty to disclose through a different avenue. The situation is analogous to that discussed in Antamarian, 36 Mass.App.Ct. at 76-78, where the plaintiffs claimed a failure to disclose knowledge regarding the property buyer’s financial instability. The Antamarian court granted summary judgment against the plaintiffs, finding no duty to disclose on the part of the defendants: “(H]ere was a negotiation and agreement between sophisticated businessmen active in real estate transactions; they were represented by counsel; the buyers made no . . . inquiry of their own into financial condition of [the opposing party], nor did they request the seller to produce such information; they did not request a guarantee of the . . . lease but now seek to exact what in effect would be a guarantee.” Id. at 77 (referencing Swinton v. Whitinsville Savings Bank, 311 Mass. 677 (1942)). In the present case, similarly, both Darn and Pizza Zone were experienced real estate businessmen, and both were represented by counsel. Paragraph 9(E) of the Lease sets forth a clear obligation for Pizza Zone to install a “suitable grease trap”; however, Pizza Zone failed to consult the Town regulations to determine what “suitable” entailed. Moreover, Pizza Zone neglected to make any inquiries to Darn on the subject.
Admittedly, Darn apparently had some knowledge regarding the grease traps, such as their required presence for establishments serving food on the premises, versus establishments not serving food on the premises. However, even if, arguendo, Dam's failure to alert Pizza Zone of this knowledge rises to the level of a “bare nondisclosure,” such an act falls short of fraud “where there is no duty to speak.” Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 322 (1983); see Windram Manufacturing Co. v. Boston Blacking Co., 239 Mass. 123, 126 (1921) (“Mere silence on the part of the defendant is all that is charged. But failure to disclose known facts does not amount to fraud, and is not the basis of an action for deceit, unless the parties stand in such relation to one another that one is under legal or equitable obligation to communicate the facts to the other.”). Pizza Zone admits that Darn never impeded it from researching the relevant requirements. This is not, as Pizza Zone suggests, an instance of a “partial disclosure” that is “deceptive unless the whole story is told.” See Antamarian, 36 Mass.App.Ct. at 77 (citing Maxwell v. Ratcliffe, 356 Mass. 560, 562-63 (1969)). Moreover, Pizza Zone cannot point to any evidence in support of its argument that Dam made false statements or misrepresentations, or that it concealed its knowledge from Pizza Zone.
Pizza Zone also argues that it satisfied the Lease’s requirement to “provide and install ... a suitable grease trap.” Specifically, Pizza Zone contends that since it installed a single, interior grease trap, it was not obligated to install a second, exterior grease trap. However, while Pizza Zone may be correct in that it only had to install one grease trap, the interior grease trap it installed was not “suitable,” since it failed to comply with the Town regulations. Indeed, the Town regulations call for an exterior, as opposed to interior, trap. See Rules and Regulations of the Milford Sewer Department, Art. V, §8(a) (“Exterior grease, oil and sand traps shall be provided for all restaurants, food establishments, and similar establishments . . .”). Pizza Zone offers no evidence suggesting Darn had a duly to ensure Pizza Zone’s compliance with such Regulations. On the contrary, the Lease puts the onus on Pizza Zone to ensure compliance: paragraph 10(E) of the Lease states, “Tenant agrees that it will procure all necessary permits, licenses and other governmental approvals . . . before beginning the conduct of business in the demised premises . . .” Since Pizza Zone failed to either consult the regulations itself or ask Darn about them, Pizza Zone’s argument cannot succeed.
Pizza Zone cannot present sufficient evidence to suggest that Dam had a duty to disclose its knowledge regarding the grease traps. As a matter of law, then, Pizza Zone’s fraud claim must fail and summary judgment be granted for Darn.
C. Violation of Chapter 93A
Next, Pizza Zone contends that Darn’s conduct constituted unfair and deceptive acts in the course of trade or business, under the Massachusetts Consumer Protection Act, G.L. chapter 93A. An act or practice is unfair and deceptive if “it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Heller Financial v. Insurance Co. of North America, 410 Mass. 400, 408 (1993) (citing Datacomm Interface v. Computerworld, Inc., 396 Mass. 760, 778 (1986)).
As Pizza Zone observes, nondisclosure of material facts may qualify as an unfair and deceptive act. See York v. Sullivan, 369 Mass. 157, 159-60 (1975). However, as discussed above, Dam’s conduct did not rise to the level of “nondisclosure of material facts.” Pizza Zone had the opportunity — unimpeded by Darn — to investigate the Lease provisions and the Town regulations, and neglected to do so. While the elements of common-law fraud need not be established to demonstrate a case of deception under chapter 93A, see Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703-04 (1975), Pizza Zone has not proffered any specific evidence of Darn’s unfair acts or deceptive acts. As such, *676 a reasonable juiy could not find that Darn committed a violation of chapter 93A. See Antamarian, 36 Mass.App.Ct. at 78-79 (finding that nondisclosure of party’s precarious financial condition did not sink to the level of “rascality” required for a violation of chapter 93A). Therefore, as a matter of law, summary judgment on this count must be granted in favor of Dam.

B. Breach of the Lease

Lastly, Darn has brought a counterclaim against Pizza Zone for breach of the Lease. Specifically, paragraph 2 of the Lease, states that the “commencement date” of the Lease “shall be . . . the day sixty (60) days after the execution of this lease, except that if Tenant shall be unable to obtain a Certificate of Occupancy (temporary or permanent) for the demised premises because of Landlord’s failure to complete any work upon the demised premises . . . then the commencement date shall be extended . . .” (emphasis added).
As discussed above, it was Pizza Zone, not Dam, whose “failure to complete . . . work upon the demised premises” resulted in the inability to obtain a Certificate of Occupancy. Accordingly, the Lease — as well as Pizza Zone’s duty to pay rent — commenced on August 9, 2004, sixty days after its execution. The evidence suggests Dam completed all its duties under the Lease, and adequately mitigated its damages by obtaining a new tenant for fourteen months. Therefore, Dam is entitled to damages under paragraph 15(B) of the Lease, which includes compensation for lost rent, damages to the premises, and broker’s fees for re-letting the premises. Darn has suggested an amount of $1,333,324.65 to which Pizza Zone has provided no real opposition. However, in the interest of completeness, the Court will permit Pizza Zone a further opportunity to submit any desired affidavits to determine whether any factual disputes exist on the issue of damages.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion for Summary Judgment be GRANTED as to all counts. Judgment shall enter in favor of Darn Realty, LLC and Moshe Attias. Judgment shall enter for the Plaintiff-in-Counterclaim, Dam Realty, LLC and the parties shall submit any further documentation relating to damages within twenty days of this order.

 Paragraph 7(B) of the Lease provides, ‘Tenant agrees that it will, proceeding with all reasonable dispatch from the time it receives a notice of substantial completion from Landlord, perform, at its own cost and expense, the work to be done by Tenant as shown in Exhibit ‘C’ so as to ready the demised premises for opening.”