Kane, Robert J., J.
Invoking G.L.c. 231, §59H, commonly referred to as the Anti-SLAPP statute, plaintiff Regan McCarthy (“McCarthy”) moves to dismiss counterclaims brought by Slade Associates, Inc. (“Slade”), Chester N. Lay and Richard F. Lay alleging that McCarthy’s complaint constitutes an abuse of process. Under the framework of G.L.c. 231, §59H, a threshold burden rests initially with McCarthy to show by pleadings and affidavits that Slade, Chester N. Lay and Richard F. Lay’s counterclaims are “based on [McCarthy’s] petitioning activities alone and [have] no substantial basis other than or in addition to the petitioning activities.” Duracraft Corp. v. Holmes Prod. Corp., 427 Mass. 156, 167-68 (1998). Satisfaction of that burden shifts the burden to defendants to show that McCarthy’s petitioning activity “was devoid of any reasonable, factual support or any arguable basis in law and [that] the moving party’s act caused actual injury to the responding party.” G.L.c. 231, §59H.

PLEADINGS

On November 20, 2006, McCarthy filed a four-count complaint naming as defendants Slade and Chester N. Lay. According to the complaint, in 1990, McCarthy purchased a lot of land (referred to as parcel 2). After McCarthy purchased the lot, McCarthy and Chester N. Lay informally discussed the bounds of Parcel 2. In approximately 1995, McCarthy hired Slade, specifically Chester N. Lay, to stake her lot comers. During this assignment, Chester N. Lay told McCarthy that Parcel 2’s westerly abutter was the McDermotts. In 2003, McCarthy hired Slade to survey Parcel 2’s southerly boundary.[1]
Confronted with a land-locked parcel and unable to secure access to a public way, McCarthy, in October of 2004, brought suit in the Massachusetts Land Court against her westerly abutter, the McDermotts, with the suit holding the potential to solve McCarthy’s *604 “land-locked problem.” The McDermotts retained Chester N. Lay to provide opinion testimony. During the prosecution of the Land Court action, McCarthy learned that her property was located to the east of where she originally believed it was situated.
In 1984 or 1985 and 1989, Slade, through Chester’s brother Richard F. Lay, respectively produced a hand-drawn sketch and a study sketch of land in Truro, both of which depicted McCarthy’s lot of land as situated considerably east of the McDermott lot of land specifically in the location that McCarthy learned of during the prosecution of the Land Court case. As a result of McCarthy’s notice that her land was not situated next to the McDermott parcel, she purchased parcel 5, the parcel abutting the McDermotts to the east, in order to have standing to bring the lawsuit.
McCarthy’s complaint alleged that it was “the duty of Lay, individually, and for and on behalf of Slade [to use reasonable care in the performance of his practice as a registered land surveyor]. Citing 250 Code Mass. Reg. 6.01(1)(a), McCarthy asserted that it was Chester N. Lay’s duty to "obtain a legal description of the property as well as a legal description of abutting property" and that in the process of completing that task to “obtain copies of recorded documents effecting the survey.” McCarthy contended that because of Chester N. Lay’s negligence in performing his duties as a land surveyor, he failed to warn McCarthy “that Parcel 2 did not occupy the southwest corner of Parcel 5" and that his negligent omission resulted in damage to McCarthy.
On January 17, 2007, Slade and Chester N. Lay answered and counterclaimed. The counterclaims asserted that McCarthy’s complaint constituted an abuse of process. According to the counterclaims, McCarthy, who was unable to secure a dismissal of her action in the Land Court, sought by her complaint to intimidate Chester N. Lay in order to influence his testimony or his willingness to testify in the Land Court and to increase her leverage in settlement discussions with the McDermotts. For the purpose of illustrating McCarthy’s intimidation, the counterclaim asserted that shortly before Chester N. Lay was deposed in the Land Court action, McCarthy, though counsel, transmitted to Chester N. Lay and Slade demand letters asserting individual demands of $1.5 million.
On July 26, 2007, McCarthy filed an amended complaint naming Slade, Chester N. Lay and Richard F. Lay as defendants. The amended complaint asserted that Richard F. Lay “prepared a quotation” for the survey of Parcel 2 . . ." and in April of 1989 produced a “study sketch of land in Truro which represents the McCarthy lot of land.” According to the complaint, Richard owed McCarthy a duty to correct Chester Lay’s report that McCarthy’s parcel abutted the McDermott’s parcel. The amended complaint omitted any description of Richard F. Lay’s participation in Slade’s staking of McCarthy’s parcel.
On November 15, 2007, Slade, Chester N. Lay and Richard F. Lay answered and counterclaimed. The counterclaims paralleled counterclaims set forth in the original answer.
SWORN PROOF
The parties to this action have engaged in immense discovery in which numerous depositions were conducted. Because deposition evidence provides equivalent reliability to affidavit evidence, this court relies on the deposition evidence in forming its judgment on the claims under G.L.c. 231, §59H. Richard F. Lay and Chester N. Lay acquired Slade in the 1970s. Richard F. Lay is the president and Chester N. Lay is the vice president; each owns 50% of Slade. Although their business is incorporated, the brothers consider themselves to be partners.
When Richard F. Lay prepared the hand-drawn and study sketches of land in the 1980s, he knew that it was Parcel 5 rather than McCarthy’s Parcel 2 that abutted the McDermott property. When Chester N. Lay, in 1995, located McCarthy’s Parcel 2 next to the McDermott property, he had access to the 1980’s sketches of land disclosing that Parcel 5 rather than Parcel 2 existed alongside the McDermott property. The sworn proof, however, fails to establish, that in either 1995, or during 2003-2004 when Slade was performing surveying services for McCarthy, that Richard Lay remembered that Parcel 5 rather than Parcel 2 existed alongside the McDermott property.[2]
In the mid-1980s, Richard F. Lay had performed survey work for Clifford Sharrock. The hand-drawn surveyor sketch prepared by Richard depicted Parcel 5 as being located directly to the east of the McDermott property. The description of Parcel 5 distinctly and materially differs from the description of Parcel 2 conveyed to McCarthy.
Up until July of 2003, Richard was not a registered land surveyor as his license had lapsed in 1982 due to his failure to renew. Therefore, Richard was operating under the land surveyor license of his brother Chester.
In 1995, Richard knew that Chester was doing work for McCarthy in the area of Higgins Hollows Road which is in the vicinity of the parcel containing both Parcels 2 and 5. Richard, who was “working under [his] brother Chester’s supervision and registration consulted with Chester daily [on] all aspects of our daily work.” They “generally [kept] tabs on what [they] were doing.” Each generally knew what projects the other brother was working on. “Usually [the two brothers were] together in the office [a] half an hour before anybody else comes in [and they] usually [talked about] what [they] [we]re working on . . .”

*605
RULINGS DEFENDANTS’ COUNTERCLAIM’S NEXUS TO PETITIONING ACTIVITY

McCarthy’s complaint asserting that Slade, Chester N. Lay, and Richard F. Lay were negligent, breached their contractual obligations, made misrepresentations and violated G.L.c. 93A represents petitioning activity as broadly defined under G.L.c. 231, §59H. In response to McCarthy’s petitioning activities, defendants filed counterclaims which specifically asserted that “by instituting this case and serving the complaint and a summons on Chester N. Lay, Richard F. Lay and Slade, McCarthy has employed process for improper and ulterior purposes.” Thus, the counterclaims contend that the act of bringing the complaint, in and of itself, constituted the abuse of process. The case therefore differs from an action in which the counterclaim alleges a subsequent misuse of process as the basis for the abuse of process claim. See Adams v. Whitman, 62 Mass.App.Ct. 850, 852-58 (2005). Here the counterclaims omitted any claim of a subsequent misuse of the process, which makes the counterclaim one that relates solely to petitioning activity. Farve v. Walton, 436 Mass. 517 (2002). In view of the nexus between defendants’ responsive counterclaims of abuse of process, and McCarthy’s petitioning activity, this court determines that defendants’ counterclaims are “based on [McCarthy’s] petitioning activities alone and [have] no substantial basis other than or in addition to [McCarthy’s] petitioning activities.” Duracraft Corp., 427 Mass. at 167-68.

DEVOID OF LEGAL OR FACTUAL SUPPORT

McCarthy’s satisfaction of the threshold burden shifts to defendants the burden to prove that McCarthy’s complaint is devoid of factual or legal support. The words “devoid of any reasonable factual support or any arguable basis in law” has not been the subject of appellate opinions, more fully describing the meaning of that language. Therefore this court looks to the ordinaiy dictionary meaning of the word “devoid,” which means “totally lacking.” Random House Webster’s Everyday Dictionary, p. 143 (2002).

DEVOID OF ARGUABLE BASIS IN LAW OR FACT

“A corporate officer is personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving or ratifying the act that injured the aggrieved party.” Townsends, Inc. v. Beaupre, 47 Mass.App.Ct. 747, 751-52 (1999) (citations omitted); Refrigeration Discount Corp. v. Catino, 330 Mass. 230, 235-36 (1953) (“As to third persons, a corporate officer . . . cannot be held liable unless he commits a breach of a duty which he owes such person”); Coe v. Ware, 271 Mass. 570, 573 (1930) (ruling that not only corporation but “agent concerned in a sale [possesses] a duty not to make false statements of fact as inducement to the sale”); Callahan v. Harvest Bd. Int’l, Inc., 138 F.Sup.2d 147, 163 (D.Mass. 2001) (“[AJlthough in certain circumstances, ‘a high corporate officer may be personally liable for the torts a corporation commits at his direction . . . the officer ordinarily is not liable for the corporation’s breach of contract’ "); United States v. Building Inspector of America, Inc., 894 F.Sup. 507, 518 (D.Mass. 1995) (“The corporation’s individual officers may share in the corporation’s liability if it can be shown that they participated directly in the practices or acts or had the authority to control them”); Cash Energy, Inc. v. Weiner, 768 F.Sup. 892, 895 (D.Mass. 1991) (“Traditional principles of corporate law preclude individual liability unless grounds are shown either for piercing the corporate veil or finding active personal involvement in a tortious act”).
Turning to the instant case, Chester N. Lay acted as Slade’s agent in performing land surveying services for McCarthy. Thus, he acted as the agent and his personal involvement in any tortious behavior makes him individually liable. However, McCarthy never retained or dealt with Richard F. Lay. The evidence fails to demonstrate any formal involvement by Richard F. Lay in providing land surveying services to McCarthy.
Moreover, Chester N. Lay possessed a surveyor’s license and Richard F. Lay only operated under Chester N. Lay’s license. Therefore, Richard F. Lay could not control the activity of Chester N. Lay who operated with a license. Similarly, despite significant discovery, McCarthy cannot point to evidence establishing that Richard F. Lay knew about the details of his brother’s survey and realized at the time Chester N. Lay was performing surveying services for McCarthy that McCarthy’s parcel lay elsewhere. All the evidence indicates is that the brothers were close, that they spoke daily about their projects and that they “generally [kept] tabs on what [they] were doing.” Only guesswork will supply the link necessary to show that Richard F. Lay knew what Chester was doing and realized that Chester’s identification of the parcel next to McDermott’s parcel was erroneous.
Consequently, this court determines that the complaint against Richard F. Lay is devoid of reasonable factual support. Additionally, prosecution of this complaint has caused actual injury to Richard F. Lay. The Cadle Company v. Schlichtmann, 448 Mass. 242, 249 (2007).

G.L.c. 231, §59H TIMING REQUIREMENTS

G.L.c. 231, §59H requires that the special motion to dismiss be filed within sixty (60) days of the service of the complaint or in the court’s discretion at any later time upon determining its being proper. This complaint was filed on November 20,2006 and on January 17, 2007, Slade and Chester N. Lay answered and counterclaimed for abuse of process. Not until February 6, 2008 did McCarthy file her special motion to dismiss under G.L.c. 231, §59H. Given the considerable period of time between the filing of the counter *606 claims and the filing of the special motion to dismiss, this court refuses to lift the presumptive deadline provided under G.L.c. 231, §59H.

ORDER

Based on the foregoing, this court DENIES McCarthy’s special motion to dismiss counterclaims for abuse of process brought by Slade, Chester N. Lay and Richard F. Lay.

On July 2, 2003, Slade invoiced the surveying services.

According to Richard N. Lay’s deposition testimony, in 1995, he “was a little disconnected to the business [as his] wife was in the hospital with ovarian cancer [that] lasted quite a while.”