R.G. & another[1] *vs.* WILLIAM C. HALL & others.[2]

No. 94-P-259.

Middlesex. June 15, 1994. - October 6, 1994.

Present: KASS, PORADA, & IRELAND, JJ.

*Constitutional Law,* Assistance of counsel. *Injunction. Practice, Civil,* Sequestration of assets.

In a civil action in which the judge entered an order sequestering the defendant's assets to secure the interest of the plaintiffs, the defendant was not entitled on constitutional or statutory grounds to the release of some of the assets to enable him to retain counsel of his choice. [412-413]

In a civil action the scope of an order for sequestration of the defendant's assets to secure the interest of the plaintiffs should be no more than the value of the prospective damages the plaintiffs realistically might recover. [414-415]

CIVIL ACTION commenced in the Superior Court Department on December 1, 1993.

A motion for preliminary injunctive relief was heard by *Julian T. Houston,* J., and a motion for reconsideration was heard by *Vieri Guy Volterra,* J.

*John Ward* (*Norman S. Zalkind* with him) for William C. Hall.

*Robert G. Najarian, Jr.,* for the plaintiffs.

KASS, J. In connection with their civil action for damages arising out of alleged multiple acts of sexual molestation by William C. Hall (Hall), R.G. and his mother obtained a preliminary injunction in Superior Court restraining the defend-

---

[1]R.G.'s mother, Julie I. Anderson, individually and as next friend.
[2]William C. Hall, Sr., Ruth J. Hall, and South Shore Bank.

ants from disposing of any assets up to $1,000,000, until the further order of the court.[3]

From that injunctive order Hall has appealed on the grounds: (1) that Hall is entitled to have an amount from his assets set aside to enable him to hire counsel of his choice; and (2) that the defendants are entitled to a hearing about whether the plaintiffs are likely to recover damages in the neighborhood of $1,000,000. We decide that Hall is not entitled as matter of law to have assets relieved from restraint so that he may pay the reasonable fees of his lawyer but that the judge must make a determination, based on evidence, that there is a reasonable probability that the damages will attain the level of the assets restrained.

Hall's father and mother, William C. Hall, Sr., and Ruth J. Hall, are defendants because, after Hall was indicted for the sexual offenses against R.G., Hall embarked upon a campaign of divesting himself of property. To his parents he conveyed a parcel of real estate in Scituate, and to his father he granted a broad power of attorney. By means of the power of attorney, Hall, Sr., transferred parcels of real estate owned by Hall in Needham and Waltham to various other persons. South Shore Bank became a defendant through a request for relief in the complaint that is in the nature of trustee process.

---

[3]The order, in form, is a continuation of a temporary restraining order issued upon the ex parte application of the plaintiffs. At the time the Superior Court judge issued the restraining order, he also directed an order to the defendants to show cause on a designated date why the restraining order was not to be continued. The amount of the property restrained was thereafter the subject of full dress argument, supported by affidavits and memoranda of law. By reason of those presentations, the continuing order of the Superior Court judge took on the characteristics of a preliminary injunction. Contrast *Royal Dynasty, Inc.* v. *Chin, ante* 171, 172-173 (1994). The appeal has proceeded under G. L. c. 231, § 118, second par., which authorizes appeals from the grant or denial of preliminary injunctive relief, even though such orders are interlocutory. To some degree, the preliminary injunction has the color of an attachment, a category of interlocutory order not ordinarily appealable to a full panel. When the form of freezing assets takes the form of an injunctive order directed against virtually all the assets of a person or involves a large sum of money ($1,000,000, we think, makes the grade), the order is subject to review according to the standards generally applicable to preliminary injunctions. *Teradyne, Inc.* v. *Mostek Corp.*, 797 F.2d 43, 45-46 (1st Cir. 1986).

See G. L. c. 246, §§ 1 et seq. Hall has a safe deposit box at that bank, and the plaintiffs wanted a restraint on transfer of any cash (for example, from the sale of the Needham and Waltham properties) that finds its way into the deposit box. The preliminary injunction also reached any other property — e.g., cash in accounts, securities — which might find its way to the bank for Hall's account.

After he had stripped himself of assets, Hall embarked for the Netherlands where, at the time the briefs were filed, he was incarcerated and the subject of extraditon proceedings to return him to Massachusetts. We have considered whether the appeal should be dismissed because Hall is a fugitive from justice. See *Commonwealth* v. *Cooke*, 380 Mass. 314, 316 (1980). Upon the return of Hall to Massachusetts, the dispute over the availability of money for his defense will inevitably resurface, and, as the questions have been briefed and argued, we will state our views about them. To that we add that the rule depriving fugitives of access to appellate courts has been applied in criminal cases and is of less certain application in civil cases, when the physical presence of the defendant may not be essential.

1. *Right to release of funds to pay lawyer.* Hall argues that, unless the court releases some of his funds or sources of funds from which he can pay his lawyer, he is effectively deprived of the right to be assisted by competent counsel, a right afforded by the Sixth Amendment to the United States Constitution, and G. L. c. 221, § 48.[4] The first difficulty with the argument is that the Sixth Amendment speaks to criminal prosecutions. On due process grounds, however, parties have a constitutional right to retain counsel in a civil case. *Potashnick* v. *Port City Constr. Co.*, 609 F.2d 1101, 1117-1119 (5th Cir.), cert. denied, 449 U.S. 820 (1980). *Gray* v. *New England Tel. & Tel. Co.*, 792 F.2d 251, 257

---

[4]That statute provides: "Parties may manage, prosecute or defend their own suits personally, or by such attorneys as they may engage; but not more than two persons for each party shall, without permission of the court, be allowed to manage any case therein."

(1st Cir. 1986). See also the statutory right, mentioned above, conferred by G. L. c. 221, § 48.

That right to retain counsel does not carry with it entitlement to funds of a defendant that have been sequestered by a court to secure the interests of a claimant or the public. *United States* v. *Monsanto*, 491 U.S. 600, 616 (1989). *Caplin & Drysdale, Chartered* v. *United States*, 491 U.S. 617, 624-633 (1989). Illustrations are the seizure of money thought to be earned from drug traffic or the seizure of assets as a "jeopardy assessment" to secure potential tax liability. *Id.* at 631 & n.8. Both the *Monsanto* and *Caplin* opinions involved criminal cases, and in such cases it has been frequently held that the right to counsel means the services of competent counsel, not necessarily counsel of choice. *Commonwealth* v. *Drolet*, 337 Mass. 396, 400 (1958). *Wheat* v. *United States*, 486 U.S. 153, 159 (1988). Cf. *Commonwealth* v. *Appleby*, 389 Mass. 359, 366 (1983). If the right to counsel is, thus, limited in criminal cases, there is some difficulty in asserting a greater right in civil cases, when money rather than liberty is at stake. See *Potashnick* v. *Port City Constr. Co.*, 609 F.2d at 1118.

Central to decisions such as *Monsanto* and *Caplin* is that there was probable cause to think the property sequestered had been acquired by the defendants through the very criminal enterprises for which they were on trial. If the assets were ill gotten, then the right of the defendant to use them was lost. There is no similar link between the defendant's property and the offense complained of in the case before us. One may ask whether, in the absence of that sort of linkage, the right to counsel trumps the interests of the claimant. In the context of civil cases, courts have emphasized the right of access to counsel, e.g., to communicate with counsel, *Potashnick* v. *Port City Constr. Co., supra* at 1117, or time, albeit limited, to obtain new counsel. *Gray* v. *New England Tel. & Tel. Co.*, 792 F.2d at 257. There has been no suggestion that defendants in civil cases have a priority to assets made the subject of a judicial sequestration order. We are not prepared to state that there should be such a priority.

2. *Evidentiary basis for the sequestration order.* Despite what we have said about there being no absolute right to sequestered funds to pay legal expenses in the case in which the sequestration order has been made, there is significant social utility in persons involved in civil cases being represented by counsel. Any trial judge who has dealt with the efforts of pro se litigants will so attest. For that reason alone a judge should tie up a defendant's assets no more than the realistic prospects of a plaintiffs recovery. "[T]he public interest is hardly served by the sheer *in terrorem* effect of allowing plaintiffs to impose (or even threaten to impose) burdens on defendants above and beyond those necessary to protect plaintiffs' otherwise unsatisfiable claims." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990). "[A] defendant — even an unsavory one — is harmed more than necessary by an injunction encumbering far more of its assets than are at stake in the underlying litigation." *Ibid.* Compare *Teradyne, Inc.* v. *Mostek Corp.*, 797 F.2d 43, 53 (1st Cir. 1986) (no abuse of discretion when District Court enjoined defendant from encumbering assets up to $4,000,000 when a judgment in the $3,000,000 to $4,000,000 range was foreseeable).

If Hall and his family are to be tied up to the tune of $1,000,000, therefore, the plaintiffs need to come up with some rational numbers. The damages alleged are mental harm from Hall's molestation of young R.G. What are the manifestations of that harm? What therapy is indicated? What is the estimated cost of that therapy? What other support may R.G. require to compensate him for his injury? The record does not reflect that any of those issues was explored. At the preliminary injunction stage, such questions may be approached by affidavit or evidentiary hearing, as the trial judge, in his discretion, considers indicated. The prospective damages may well be imprecise, and the judge may wish to consider whether carving from Hall's assets a precise amount for the payment of counsel in this civil case will be in the interests of justice.

R.G. *v.* Hall.

First, then, the judge should reconsider the amount of assets to be sequestered on the basis of a showing by the plaintiffs as to what they may reasonably recover. If that amount is less than Hall's known assets, resources for his legal expenses will be available. Second, if the value of assets to be restrained appears to be equal or exceed Hall's known assets, the judge may, nonetheless, consider whether a finite sum can be set aside for legal expenses in this case,[5] such that a reasonably adequate fund remains available to meet a judgment obtained by the plaintiffs.

The case is remanded to the Superior Court for reconsideration of the preliminary injunction in accordance with this opinion within one month after the rescript issues. The injunction shall remain in effect during that month or to disposition after hearing, whichever time period is shorter. Any appeal from the ensuing order by the defendant Hall may be entered in this court without further payment of entry fee.

*So ordered.*

---

[5]For the reasons previously given in this opinion, money from Hall's assets need not be made available for legal expenses incident to defense in the *criminal* prosecution against him. If assets are sufficiently in excess of probable recovery, then assets could be made available for defense in the criminal case.