# United States Court of Appeals
## For the First Circuit

No. 04-2563

MICRO SIGNAL RESEARCH, INC.,

Plaintiff, Appellee,

v.

NURI OTUS and MAUREEN CUNNINGHAM,

Defendants, Appellants.

_____

CUPERTINO NATIONAL BANK & TRUST,

Trustee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. Senior District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Baldock,* Senior Circuit Judge.

Michael C. Fee with whom Sabrina K. Lanz and Fee, Rosse &
Lanz, P.C. were on brief for appellants.
Timothy J. Perry with whom Perry, Krumsiek & Wayland LLP was
on brief for appellee.

July 19, 2005

_____

*Of the Tenth Circuit, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  Nuri Otus and Maureen Cunningham, defendants in the district court, seek review of three interlocutory orders entered by the district court at the behest of the plaintiff, Micro Signal Research, Inc. ("Micro").  The purpose of the orders was to provide security to satisfy the money judgment that Micro is seeking against the defendants.

The facts, drawn from the initial filings in the district court, appear as follows.  Otus and Cunningham are married to each other and work together in business ventures.  One of their ventures involved a business entity called AuctioNet.  AuctioNet ran a website (auctionet.com) and specialized in buying and selling used technology equipment.

The exact relationship of Otus and Cunningham to AuctioNet is cloudy.  From 1999 to 2001, AuctioNet was affiliated with a California corporation called AuctioNet.com, Inc.; in July 2001 it merged into Realm Connect Corporation ("Realm"), which apparently continued the AuctioNet business.  Otus and Cunningham together owned 44 percent of the equity in Realm.  Otus was Realm's president and CEO and one of its three directors; Cunningham was present for at least one board meeting and, according to Micro's later affidavit, held herself out to be AuctioNet's CFO and vice president.

During October 2003, Otus discussed with Daniel Epstein, President of Micro, a joint venture to buy certain electronic

equipment that Otus said was available and some of which the pair viewed together. By e-mail exchanges during October and November, the two men agreed that Micro would provide $210,000 for a half share in the acquisition venture. On November 10, 2003, Otus e-mailed Epstein to wire the money to Cupertino National Bank & Trust, as the destination bank, payable to AuctioNet.com. Epstein wired the money.

Thereafter, Otus advised by e-mail that he had contracted to buy the equipment and described deals allegedly being set up so the equipment could be resold at a profit. In April 2004, after delays by Otus in providing further information, Epstein discovered that Otus had never purchased the equipment, which had been sold in November 2003 to someone else. When Epstein sought the return of his $210,000, Otus over several months claimed that he would repay the money, eventually saying that he and Cunningham were on the verge of refinancing their house to pay Micro back.

No repayment ever occurred. Instead, in August 2004, Realm went out of business, unable to pay its creditors. By October 2004, Otus and Cunningham were engaged in the same business through a new company called Asset Management Associates Group, Ltd. ("AMA")--Cunningham as a shareholder and Otus allegedly as an independent contractor serving as an "auctioneer." On October 28, 2004, Micro filed the present action against Otus, Cunningham and

Cupertino in the federal district court in Massachusetts based on diversity jurisdiction.

Micro's complaint made claims against Otis and Cunningham for inter alia conversion, fraud, breach of contract, and under Mass. Gen. Laws ch. 93A (2002), which provides for multiple damages and attorneys' fees for egregious misconduct. Micro also sought as interim relief a preliminary injunction requiring Otus and his wife to pay to Micro or into the registry of the district court "all funds" up to $210,000 "that they are presently earning from the[ir] new business entity"; trustee process attachment of all funds up to the same amount held at Cupertino in the couples' name; and attachment of real property (also up to $210,000) held by the couple in Massachusetts or California.[1]

On November 4, 2004, after a hearing the district court granted all three requests for interim relief, requiring by the preliminary injunction that the $210,000 from present earnings be paid into court rather than Micro. The grant followed submission of motion papers, an opposition and affidavits. The district court

---

[1]Fed. R. Civ. P. 64 allows for the grant of prejudgment security "in the manner provided by the law of the state in which the district court is held." Massachusetts allows attachment of property "upon a writ of attachment in any action in which the debt or damages are recoverable . . . ." Mass. Gen. Laws ch. 223 § 42 (2002); Mass. R. Civ. P. 4.1. A trustee process attachment is a different Massachusetts device to freeze interests held by a third party but belonging to the defendant. See Xerox Fin. Servs. Life Ins. Co. v. High Plains Ltd. P'ship, 44 F.3d 1033, 1036-37 (1st Cir. 1995); Mass. R. Civ. P. 4.2.

made no findings in the order granting relief, beyond saying that the defendants admitted their debt to Micro. Otus and Cunningham now appeal, contesting all three grants of interim relief. Cupertino has never entered an appearance.

The grant of a preliminary injunction is immediately appealable, 28 U.S.C. § 1292(a)(1) (2000); Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 155-56 (1st Cir. 2004), and must be justified under the familiar four-part test: likelihood of success on the merits, irreparable injury absent relief, harm to the defendant if relief is granted, and any public interest considerations. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). Review, except on issues of abstract law, is deferential. Id.

In attacking the preliminary injunction, defendants' main arguments are that the joint venture was between Micro and Realm, that Otus was acting on its behalf rather than in a personal capacity, that facts necessary to "pierce the corporate veil" have not been show, and that neither husband nor wife is liable for Realm's debts. Thus, they say, Micro has not shown a likelihood of success on the merits which, with rare exceptions, is an independent precondition for a preliminary injunction.

As to Otus, the argument is hopeless. The facts set forth above, based on the evidence thus far, strongly suggest fraud on Otus's part. Even if AuctioNet or Realm was a legitimate

-5-

business venture and Otus was merely acting on its behalf, fraud by a corporate officer normally makes him independently liable without any need to pierce the corporate veil.[2]  Otus may offer a countervailing version of events when the merits are tried but, on this record, a likelihood of success on the fraud claim against him personally is made out.

The defendants also deny that irreparable injury has been established.  The possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury, GA Enters., Inc. v. Leisure Living Cmtys., Inc., 355 F. Supp. 947, 948 (D. Mass. 1973), but the story is quite different where there is a strong indication that the defendant may dissipate or conceal assets.  See, e.g., Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 881 (9th Cir. 2003); Elliot v. Kiesewetter, 98 F.3d 47, 58 (3d Cir. 1996).  Otus's probable fraud, his prevarications about repayment, and the switch of the business from Realm to AMA are ample indication of the need for relief against Otus.

The preliminary injunction against Cunningham is a different story, since her involvement in the fraud is less clear. In explaining the basis for the injunction, the district court's

---

[2]See Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 938 (1st Cir. 1985); Townsends, Inc. v. Beaupre, 716 N.E.2d 160, 164 (Mass. App. Ct. 1999); Wyatt v. Union Mortgage Co., 598 P.2d 45, 52 (Cal. 1979); A-1 Check Cashing Serv., Inc. v. Goodman, 538 N.Y.S.2d 830, 831 (App. Div. 1989).

order merely said--before specifying the relief granted--that "defendants do not contest the existence of the [$210,000] debt owed to plaintiff, and they have repeatedly acknowledged their obligation to repay same." Micro Signal Research, Inc. v. Otus, No. 04-12300 (D. Mass. Nov. 4, 2004).

The lack of detail does not preclude us from affirming if the record demonstrates that Cunningham has admitted her own liability. Although Fed. R. Civ. P. 52(a) requires fact-findings in support of a preliminary injunction, appellate courts are not overly demanding where the evidence makes clear what the court has implicitly found. In all events, an admission in court of personal liability would not need further explanation.

Whether Cunningham admitted liability could be disputed. The only pertinent portion of the transcript furnished to us reveals defense counsel saying to the district judge: "[T]hey [the defendants] acknowledge the existence of the debt, and they have made attempts to try and work out arrangements whereby --" [counsel is then cut off by the judge]. There is also evidence in the correspondence of supposed efforts to refinance the family home, which is probably the effort to which counsel is referring. This is about all in the record.

In Micro's brief, plaintiff's counsel asserts that when Micro threatened to take the matter to the police,

> [a]ppellants . . . promised to personally
> repay the debt. They did so repeatedly both

-7-

> orally and in writing through their counsel
> for a period of approximately six months.
> Appellants went so far as to state that they
> would refinance their own home to repay the
> debt and, indeed, provided supposed refinance
> documents from their bank to reassure [Micro].

But there is no citation in support of the prior oral admissions, and the pertinent correspondence in the record from California counsel appears to be written primarily on behalf of Otus. Nothing in Epstein's affidavit in the district court describes any oral admission by Cunningham.

The proof at trial might implicate Cunningham in the fraud or provide a basis for finding that the contractual agreement was with her and Otus personally or ultimately prove that Realm was a shell and she and Otus were the real parties in interest. But all this is unclear and the district judge made no findings on the point. Nor, as with Otus, can we say that the admission is irrelevant because of the patent evidence of personal liability (contained, as to Otus, in the Epstein affidavit).

Nevertheless, defense counsel's above quoted statement in court looks like an admission of liability--although not of fraud-- as to both defendants. If there were some doubt about its meaning (e.g., that counsel was only intending to admit that Otus was liable), we could expect counsel to have said so in his reply brief, since Micro's answering brief (like the district judge) relies so squarely on defense counsel's admission as binding both defendants. Nothing of the kind is claimed.

Instead, the reply brief attempts to assert that any admissions that defendants may have made earlier in attempting to settle the case were "offers of compromise" or "gratuitous" promises that are not enforceable. Not a word is said to suggest that defense counsel's statement in open court has been misinterpreted. Whatever the status of out-of-court offers to compromise or pay, an admission by counsel of his clients' personal liability in open court is ample basis for determining that the other side is likely to prevail on the merits.

For all we know, the admission, seemingly on behalf of both defendants, might have led Micro to withhold evidence or arguments that might otherwise have been presented, or dissuaded the district judge from seeking more evidence and making more detailed findings. If counsel meant to concede only the liability of Otus and to deny it as to Cunningham, it would have been easy enough to say so. Whatever the significance of the admission in further proceedings, it is enough to support the preliminary injunction.

This disposes of the claims made on appeal pertaining to the preliminary injunction.[3] There remain claims by defendants

---

[3]Appellants might have argued that injunctive relief in these circumstances is beyond the historic role of equity, see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 332-33 (1999), but that case involved only federal equity power and a claimed breach of contract. In this diversity case, state law might arguably govern, see R.G. v. Hall, 640 N.E.2d 492, 492 & n.3 (Mass. App. Ct. 1994) (upholding such relief), but in any

that the district court had no authority to issue its attachment order as to defendants' real property located in California, and that it lacked jurisdiction to order trustee process attachment directed at Cupertino, a bank apparently located only in California. Compare Mass. Gen. Laws ch. 246 § 1 (2002).

But unlike preliminary injunctions, which are immediately appealable by statute, no such exception to the normal final judgment rule exists as to attachments. See Charlesbank, 370 F.3d at 156; Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 45-46 (1st Cir. 1986). Nor have defendants made any effort to show that, in their particular circumstances, the collateral order exception to the final judgment rule applies to their case. See Rhode Island v. U.S. Envtl. Prot. Agency, 378 F.3d 19, 25 (1st Cir. 2004); see also Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949).

Defendants do argue that the attachment of their property and the trustee process attachment are in substance preliminary injunctions. Admittedly, substance, and not the name given in the order, controls as to whether relief amounts to an injunction. Charlesbank, 370 F.3d at 156; Teradyne, 797 F.2d at 46-47. But in both those cases, the orders involved directives that the defendants there act or refrain from acting--the substance of a classic injunction. E.g., Teradyne, 797 F.2d at 44-45 (order

event the Grupo objection was not made an appeal and so is forfeited.

-10-

enjoining defendant from disposing of $4 million and requiring the money to be put aside in an account).

By contrast, the attachment of appellants' real property merely imposes a lien and does not compel them to do or refrain from doing anything.  The trustee process is a closer case because, although it does not compel the defendants to do or refrain from doing anything, it effectively prevents the trustee from turning over the property to them.  On the merits, trustee process may be barred here if Cupertino has no connection with Massachusetts.  Mass. Gen. Laws ch. 246 § 1 (2002).  See also Wyshak v. Anaconda Copper Mining Co., 103 N.E.2d 230, 232 (Mass. 1952).

However, defendants argue in support of our jurisdiction only that the two attachments were part of the same request as the preliminary injunction.  That argument proves nothing.  See FDIC v. Elio, 39 F.3d 1239, 1249 (1st Cir. 1994).  Part of a single judgment may be appealable and another part not.  It is up to defendants to show that we have jurisdiction over their appeal of the attachments; whether or not a stronger case for jurisdiction could have been made, it has not been provided here.

The preliminary injunction is affirmed.  Insofar as the appeal is from the attachments, the appeal is dismissed.

It is so ordered.