# United States Court of Appeals
## For the First Circuit

Nos. 20-1097
     20-1141

JOSE PINEDA, JOSE MONTENEGRO, MARCO LOPEZ, and JOSE HERNANDEZ,
  on behalf of themselves and all others similarly situated,

Plaintiffs, Appellees,

v.

SKINNER SERVICES, INC., d/b/a Skinner Demolition, THOMAS
SKINNER, DAVID SKINNER, ELBER DINIZ, and SANDRO SANTOS,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Michael B. Cole, with whom Gregory J. Aceto and Aceto, Bonner
& Cole, P.C. were on brief, for appellants.
    Jasper Groner, with whom Nathan P. Goldstein, Paige W.
McKissock, and Segal Roitman, LLP were on brief, for appellees.

December 30, 2021

**LYNCH**, **Circuit Judge**.  The district court entered a preliminary injunction against Skinner Services, Inc., d/b/a Skinner Demolition, Thomas Skinner, David Skinner, Elber Diniz, and Sandro Santos (collectively, "Skinner"), finding Skinner likely had violated state and federal wage laws as to its laborers and was trying to transfer assets from the laborers' reach. Skinner had created four separate entities after the laborers filed this lawsuit, all of which the workers allege were used to dissipate or hide assets.  This injunction comes after the court had held Skinner in contempt for retaliating against one of its laborers who participated in this suit.  Skinner appeals the preliminary injunction.

Skinner's primary appellate argument, which is mistaken, is based on an incorrect reading of the Supreme Court's holding in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999).  The Court held in Grupo Mexicano that federal courts lack equitable jurisdiction under Federal Rule of Civil Procedure 65 to enter preliminary injunctions that prevent the transfer of assets pending the adjudication of a claim for money damages.  Id. at 333.  Grupo Mexicano does not constrain the district court's authority to grant analogous relief under Rule 64 when authorized by the law of the forum state, as is the case here. The district court's entry of a preliminary injunction is affirmed.

- 2 -

## I.  Background

Skinner Demolition is a company that performs demolition work on construction sites throughout New England and other nearby states.  It is owned and managed by the individual defendants named in this case.  Jose Pineda, Jose Montenegro, Marco Lopez, and Jose Hernandez (collectively, "Pineda") are former low-wage employees of Skinner Demolition.  They have sued Skinner on behalf of themselves and other similarly situated workers for unpaid wages.

Pineda alleges two categories of violations: Skinner unlawfully excluded from the workers' pay the time spent reporting to and from Skinner Demolition's headquarters (the "Yard"), despite apparently requiring the workers to so report daily ("Reporting Policy")[1]; and Skinner improperly deducted from each worker approximately an hour of pay per week to pay for a uniform laundering service ("Uniform Policy").  The workers' expert has opined that these violations have resulted in between approximately $400,000 and $650,000 in unpaid wages.

Pineda alleges that between August 2013 and January 2016, Skinner required the workers to report to the Yard each

---

[1]    This policy did not apply to laborers living in and around Boston, Massachusetts.  Accordingly, the Reporting Policy-based FLSA collective and Rule 23 class exclude this group of laborers.  See Pineda v. Skinner Servs., Inc. ("Pineda III"), No. 16-cv-12217, 2019 WL 3754015, at *1, *6, *11-12 (D. Mass. Aug. 8, 2019).  These laborers were not excluded from the collective or class relating to the Uniform Policy which is next described.  Id. at *10.

morning to receive job assignments and collect tools and equipment. The workers were not told their assigned construction site before arriving at the Yard. The workers also were required to report to the Yard at the end of each workday to return the tools and equipment. The Reporting Policy violations alleged under both state and federal law are that, although the construction jobsites could be anywhere between forty-five minutes and three hours' drive from the Yard, the workers were not permitted to "punch in" to begin paid work until they arrived at their first jobsite for the day. These workers were also required to "punch out" when they left their final construction site, before returning to the Yard. Subject to rare exceptions, the workers were not paid for travel time between the Yard and the construction sites.[2]

As to the Uniform Policy, the violations alleged are that, from August 5, 2013 through the present, Skinner would deduct approximately an hour of wages per week from certain employees' paychecks for "uniform washing," regardless of how much the service actually cost or whether the worker actually utilized the service. Pineda states that Skinner "rarely washed Class Plaintiffs'

---

[2] The workers who drove to and from Skinner Demolition headquarters (referred to as "Driver Plaintiffs") were occasionally, but not always, paid for up to an hour of travel each way, never more. The workers allege that Skinner also "would occasionally pay Driver Plaintiffs $20 per day for gas, regardless of how much gas Driver Plaintiffs used during the workday. Driver Plaintiffs often used more than $20 of gas in a given workday."

uniforms or performed any other services in exchange for the 'uniform washing' fee."

A. Department of Labor Investigation

Between 2013 and 2015, the Wage and Hour Division of the U.S. Department of Labor investigated the wage practices of Skinner. Following that investigation, the primary investigator prepared and submitted a ten-page report, concluding that Skinner violated Sections 7 and 11 of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). The report stated that

> the employees would show up at the [Yard], participate in "pre-tour" activities such as loading the truck with tools and other equipment and being assigned work, and then ride to the job site on the company vehicle, all at the instruction of the employer. All of this work was unpaid for the purposes of hours worked as defined under 29 CFR 785.38 (Travel that is all in the day's work). . . . Thus, employees are not punching in at the [Yard] as they should be, but rather, they are punching in some 2 hours later upon arrival at the job site, which is long after they've arrived at work and performed pre-tour activities.

The investigator estimated that Skinner owed a total of more than $800,000 in back wages to over 100 employees. The Assistant District Director thereafter ended the Department of Labor's investigation due to the present litigation and a separate complaint pending before the Equal Employment Opportunity Commission.

- 5 -

B. Procedural History

Pineda filed this action in 2016, alleging collective claims under the FLSA, and class claims under the Massachusetts Overtime Law, Mass. Gen. Laws ch. 151, §§ 1A & 1B, the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1, et seq., the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and the Massachusetts Fair Wage Act, Mass. Gen. Laws. Ch. 151, § 19(5).

On September 6, 2017, the district court conditionally certified the FLSA collective. The court thereafter entered a protective order to prohibit Skinner from retaliating against any workers who participate or assist in this litigation. Skinner, having terminated one of its workers in August 2018 for opting into the collective action and testifying favorably to the workers in a deposition, was held in contempt of court in December 2018 for violating the protective order.

On August 8, 2019, the district court certified two classes under Federal Rule of Civil Procedure 23 as to Pineda's state law claims. The court observed as to the Reporting Policy class, inter alia, that "[i]f, as plaintiffs allege, Skinner required its laborers during the class period to report to the Yard to load equipment and receive jobsite assignments without compensation, that would likely be a clear violation of Massachusetts wage laws." Pineda v. Skinner Servs., Inc. ("Pineda

- 6 -

III"), No. 16-cv-12217, 2019 WL 3754015, at *6, *11-12 (D. Mass. Aug. 8, 2019). The court added for the Uniform Policy class that "plaintiffs have proffered evidence that their enrollment in the [uniform washing] program was involuntary," and thus unlawful. Id. at *11 (emphasis in original).

As these proceedings were taking place, the four individual defendants created four new entities: Skinner Disposal (organized on January 3, 2017); Skinner Consulting (organized on March 16, 2017); Skinner Staffing (organized on April 21, 2017); and 155 Shakedown Street (organized on December 11, 2017). The workers have alleged that Skinner created these entities in order to "transfer corporate assets and prevent [p]laintiffs from recovering damages should they prevail on their claims." The record discloses the following about these entities.

Skinner Disposal was created to provide "roll-off dumpster services," a service also provided by Skinner Demolition. Skinner Disposal primarily served one client: Skinner Demolition. Its only employees were defendants Thomas Skinner and Sandro Santos and those "borrowed" from Skinner Demolition. All employees were paid through Skinner Demolition's payroll, and Skinner Demolition covered additional expenses for Skinner Disposal. In February 2019, Skinner Disposal was sold for several million dollars.[3]

_____

[3] Less than two months after this sale, Skinner reported to the court that paying approximately $46,000 into escrow would

- 7 -

Pineda contends the company "was created by Defendants for the purpose of transferring and sheltering their assets."

Skinner states that Skinner Consulting provided "construction consulting for estimating projects and project management." Skinner Demolition was a client of Skinner Consulting, and Skinner Consulting's sole owner, officer, director, and employee was David Skinner, who was paid $10,000 each month by Skinner Demolition. Pineda alleges the company "operated as merely a vehicle through which Skinner Demolition funneled money to David." The company was dissolved by August 2019.

There is no evidence the remaining two entities, Skinner Staffing and 155 Shakedown Street, ever became operational.

In September 2019, Skinner filed three summary judgment motions. Pineda filed a memorandum in opposition in October 2019, together with a motion for preliminary injunction, prejudgment attachment, attachment by trustee process, or discovery in the alternative. In the motion for injunctive relief, the workers argued that they had "reasonable concern that [d]efendants will accelerate any efforts to insulate their individual and corporate assets to avoid a meaningful recovery for [p]laintiffs." The district court held a hearing on the pending motions in December

make it difficult for Skinner to make payroll and meet its obligations to creditors.

2019. The motion for a preliminary injunction was allowed on December 23, 2019, Pineda v. Skinner Services, Inc. ("Pineda IV"), No. 16-cv-12217, 2019 WL 8262655, at *3-4 (D. Mass. Dec. 23, 2019), after which Skinner appealed and moved for reconsideration. The motion for reconsideration was denied in January 2020, Pineda v. Skinner Services, Inc. ("Pineda VI"), No. 16-cv-12217, 2020 WL 1310035 (D. Mass. Jan. 24, 2020), and another appeal followed.

The preliminary injunction orders "Skinner Demolition, and all persons or entities with knowledge of this Order acting in concert with them" to:

- [R]estrain[] from selling, transferring, or otherwise conveying any assets of Skinner [Demolition], except in the ordinary course of business, unless the net value of the assets of Skinner [Demolition] will be at least $1,425,000 regardless of any such sale, transfer, or conveyance[;]

. . .

- [P]rovide reasonable advance notice to plaintiffs for any sale, transfer, or conveyance of any asset having a value of more than $25,000; and

- [W]ithin 21 days of this order, provide an accounting of the sale, transfer, or conveyance of any asset having a value of more than $25,000 from November 2, 2016, to the date of this order.[4]

---

[4] The court's order further directed a writ of attachment to issue pursuant to Mass. R. Civ. P. 4.1(c) as to the physical, tangible property of Skinner Demolition in the amount of $1.425 million. Pineda IV, 2019 WL 8262655, at *4. Skinner does not challenge in this appeal that portion of the order for jurisdictional reasons. See Charlesbank Equity Fund II v. Blinds

- 9 -

<u>Pineda IV</u>, 2019 WL 8262655, at *3.  In a January 2020 Memorandum and Order, the district court "stayed" the accounting provisions in part pending appeal, authorizing Skinner to provide the accounting only to the court for <u>in camera</u> review.  <u>See</u> <u>Pineda</u> v. <u>Skinner Servs., Inc.</u> ("<u>Pineda V</u>"), No. 16-cv-12217, 2020 WL 1308086, at *1 (D. Mass. Jan. 23, 2020).

**II.  Discussion**

Skinner uses a "belt and suspenders" approach to challenging the preliminary injunction.  We take each argument in turn.

A. <u>Legal Standards</u>

Our review of a district court's decision to grant a preliminary injunction is for abuse of discretion.  <u>OfficeMax, Inc.</u> v. <u>Levesque</u>, 658 F.3d 94, 97 (1st Cir. 2011).  "Within that framework, however, findings of fact are reviewed for clear error and issues of law are reviewed de novo."  <u>Braintree Lab'ys, Inc.</u> v. <u>Citigroup Glob. Marks. Inc.</u>, 622 F.3d 36, 41 (1st Cir. 2010) (quoting <u>United States</u> v. <u>Weikert</u>, 504 F.3d 1, 6 (1st Cir. 2007)).

Under Massachusetts law, a party seeking a preliminary injunction must meet a three-part test: (1) that he likely is to

---

To Go, Inc., 370 F.3d 151, 156 (1st Cir. 2004) ("It is common ground that -- at least in the absence of special circumstances -- federal appellate courts lack jurisdiction to undertake interlocutory review of orders granting prejudgment attachments.").

succeed on the merits, (2) that he likely will suffer irreparable harm in the absence of the preliminary relief, and (3) that the risk of irreparable harm outweighs the potential harm to the nonmoving party if the injunction is awarded. Mass. Port Auth. v. Turo Inc., 166 N.E.3d 972, 978 (Mass. 2021).

B. The District Court had the Authority to Enter the Preliminary Injunction

Skinner's primary appellate argument is that, based on the Supreme Court's decision in Grupo Mexicano, the district court was without authority to grant preliminary relief enjoining Skinner from using its assets pending the adjudication of Pineda's wage and hour claims. See 527 U.S. at 333.

i. Grupo Mexicano Did Not Limit the District Court's Authority to Act Under Rule 64

Skinner's argument that the preliminary injunction, which was issued under Massachusetts law, contravenes the holding in Grupo Mexicano is without merit. The Supreme Court held in Grupo Mexicano that federal courts have "no authority [under Rule 65] to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' . . . claim for money damages." 527 U.S. at 333. The Court based its analysis upon the historical powers of federal courts of equity, which the Court found did not extend to the issuance of such preliminary injunctions. See id. at 319-22. The Court explicitly did not consider the argument that such a preliminary

- 11 -

injunction was available under the law of the forum state pursuant to Rule 64.  Id. at 318 n.3; see also id. at 330-31 (noting that Rule 64 authorizes the use of state prejudgment remedies).

Here, the district court correctly held that it was authorized by Rule 64 and Massachusetts law to issue the preliminary injunction.  Rule 64 provides that in any federal action, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Fed. R. Civ. P. 64(a).  Many courts have interpreted this Rule to include injunctive relief under state law.  See, e.g. U.S. ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 501 (4th Cir. 1999) ("[T]he scope of [Rule] 64 incorporates state procedures authorizing any meaningful interference with property to secure satisfaction of a judgment, including any state-authorized injunctive relief for freezing assets."); see also Hendricks v. Bank of Am. N.A., 408 F.3d 1127, 1139 (9th Cir. 2005) (applying California standard for preliminary injunction under Rule 64); Coley v. Vannguard Urban Improvement Assoc., Inc., No. 12-cv-5565, 2016 WL 7217641, at *6 (E.D.N.Y. Dec. 13, 2016) (same for New York) (collecting cases).  This court also has recognized as much in dicta.  See Micro Signal Rsch. Inc. v. Otus, 417 F.3d 28, 33 n.3 (1st Cir. 2005) ("Appellants might have argued that injunctive relief in these circumstances is beyond the historic role of

equity, see Grupo Mexicano[], but that case involved only federal equity power and a claimed breach of contract. In this diversity case, state law may arguably govern . . . ." (citations omitted)); Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 161 (1st Cir. 2004) ("The Court's reasoning [in Grupo Mexicano] supports the continued vitality of Rule 64.").

Skinner's fall-back argument is that a district court's power to enter a preliminary injunction under Rule 64, if any, is limited to cases brought to federal court under diversity jurisdiction. This argument is unsupported and unpersuasive. Nothing in Rule 64 indicates that the power to rely upon the forum state's law to "secure satisfaction of the potential judgment" turns on the basis for the district court's subject-matter jurisdiction. And Skinner cites no case law so limiting the scope of Rule 64.

Skinner further argues the preliminary injunction entered here was not permitted by Massachusetts law. It contends that the same limitations on federal equity jurisdiction discussed in Grupo Mexicano confine Massachusetts state courts sitting in equity, and the preliminary injunction here constitutes a "creditor's bill" that cannot be issued prejudgment. Skinner points to no Massachusetts appellate court decision adopting its

argument.[5]  And there is good reason for that, because we have found no such support in the caselaw.

The weight of Massachusetts authority indicates that the Supreme Judicial Court of Massachusetts would permit the preliminary injunction at issue here.  Under Massachusetts law, trial courts are afforded "broad discretion to grant or deny injunctive relief."  Lightlab Imaging, Inc. v. Axsun Techs., Inc., 13 N.E.3d 604, 614 (Mass. 2014).  Contrary to Skinner's position, this discretion historically has included the authority to enter a preliminary injunction restraining defendants' assets in circumstances similar to the case at bar.  See, e.g., Bos. Athletic Assoc. v. Int'l Marathons, Inc., 467 N.E.2d 58, 62 (Mass. 1984) (affirming preliminary relief enjoining the dispersal of defendant's funds); R.G. v. Hall, 640 N.E.2d 492, 494 (Mass. App. Ct. 1994) (indicating a court's authority to sequester defendant's assets up to the amount plaintiffs may reasonably recover); Riley

_____

[5]     In support instead, Skinner cites a line of non-binding trial court decisions issued by a single Superior Court judge holding that preliminary injunctions enjoining the dispersal of assets is unavailable under the equity powers of Massachusetts state courts.  See SW Invs., Inc. v. 75 Sydney St., LLC, No. 2184-cv-00338, 2021 WL 5626284, at *1–2 (Mass. Super. Ct. Apr. 6, 2021) (Salinger, J.); Anaesthesia Assocs. of Mass., PC v. Plexus Anesthesia Servs. of Mass., PC, 34 Mass. L. Rptr. 668, 2018 WL 1863660, at *2–3 (Mass. Super. Ct. Feb. 21, 2018) (Salinger, J.); ABCD Holdings, LLC v. Hannon, No. 1684-cv-01840, 2016 WL 4211501, at *2 (Mass. Super. Ct. June 27, 2016) (Salinger, J.); Interisle Consulting Grp., LLC v. Galaxy Internet Servs., Inc., 32 Mass. L. Rptr. 177, 2014 WL 3816557, at *1–2 (Mass. Super. Ct. June 16, 2014) (Salinger, J.).

- 14 -

v. Mechs. Bank, 395 N.E.2d 889, 890 (Mass. App. Ct. 1979) (affirming entry of preliminary injunction restricting defendant from selling or transferring certain assets).[6]

The district court correctly asserted its authority under Rule 64 and Massachusetts law to enjoin Skinner from dissipating its assets to avoid payment of any judgment against Skinner.

### C. The District Court did not Abuse its Discretion

Skinner next challenges the preliminary injunction on the ground that, in this case which the district court has been presiding over for years, the court failed to set forth the specific factual findings upon which it based its decision to enter a preliminary injunction. Skinner argues the district court failed to satisfy its obligation under Federal Rule of Civil Procedure 52, leaving the parties only to speculate as to the court's reasoning. Skinner adds that the district court abused its discretion by concluding that Pineda made the requisite

---

[6] Unpublished Superior Court decisions have reached the same result. See, e.g., Berardi Lending, LLC v. LS Southfield, LLC, No. 1884-cv-02184, 2018 Mass. Super. LEXIS 230, *6-7 (Mass. Super. Ct. Aug. 24, 2018) (unpublished); Marino, P.C. v. PJD Ent. of Worcester, Inc., No. 981211B, 1998 WL 1181259, at *1 (Mass. Super. Ct. July 14, 1998) (unpublished); see also Commonwealth v. Caliri, 10 N.E. 3d 671 (Table), 2014 WL 2815527, *1-3 (Mass. App. Ct. June 24, 2014) (unpublished) (affirming a contempt order relating to a preliminary injunction which enjoined defendant from dissipating his assets).

- 15 -

demonstrations of likelihood of success and irreparable harm, and by not requiring the workers to post a bond pursuant to Rule 65(c).

Pineda disagrees and argues the district court's factual findings are clear from the record and the "extensive findings of fact issued by the [d]istrict [c]ourt on numerous other [m]otions brought by the parties." Pineda further contends that the workers proffered proof sufficient to show they likely will succeed on the merits and would suffer irreparable harm if the preliminary injunction did not issue. The workers add that the court appropriately declined to require a bond in this case.

This court holds that Pineda presented ample evidence from which the district court reasonably could determine that Pineda demonstrated a reasonable likelihood of success on the merits of the workers' claims; Pineda likely will suffer irreparable harm because Skinner "may dissipate or conceal [its] assets to avoid judgment"; and, the balance of the equities weigh in Pineda's favor, warranting the preliminary injunction entered in this case. Pineda IV, 2019 WL 8262655, at *1. This evidence, together with the other testimonial and documentary evidence submitted in this well-traveled case, supports the district court's entry of the preliminary injunction.

To the extent Rule 52(a) requires fact-findings in support of a preliminary injunction, "appellate courts are not overly demanding where the evidence [in the record] makes clear

what the court has implicitly found." Micro Signal, 417 F.3d at 32. We can affirm the result where, as here, "the basis for the court's decision is clear" and the "record gives substantial and unequivocal support for the ultimate conclusion." Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1078-79 (1st Cir. 1995) (quoting Unt v. Aerospace Corp., 765 F.3d 1440, 1444 (9th Cir. 1985)). In a case such as this, where the district court has been handling it for years, has received substantial testimonial and documentary evidence in connection with the preliminary injunction motion and other motions, and has held a hearing on the matter, the court's sparse written factual findings will not be fatal to its entry of a preliminary injunction. See id. at 1079 ("[A]nemic factual findings are not fatal to the decision so long as a complete understanding of the issues may be had from the record on appeal."); see, e.g., Pineda v. Skinner Services, LLC ("Pineda I"), No. 16-cv-12217, Dkt. No. 69 (D. Mass. Sept. 6, 2017) (granting conditional class certification); Pineda v. Skinner Services, LLC ("Pineda II"), No. 16-cv-12217, 2018 WL 10579448 (D. Mass. Dec. 10, 2018) (granting plaintiffs' motion for contempt of court); Pineda III, 2019 WL 3754015 (granting plaintiffs' motion for class certification); Pineda IV, 2019 WL 8262655 (entering preliminary injunction); Pineda V, 2020 WL 1308086 (granting in part denying in part defendants' motion to stay preliminary injunction); Pineda VI, 2020 WL 1310035 (denying defendants'

motion for reconsideration concerning the preliminary injunction); see also <u>Pineda</u> v. <u>Skinner Services, LLC</u> ("<u>Pineda VII</u>"), No. 16-cv-12217, 2020 WL 5775160 (D. Mass. Sept. 28, 2020) (denying, for the most part, defendants' motions for summary judgment). The district court was not required to repeat its factual findings in each and every memorandum and order entered in this case.

Further, based on this record, the district court did not abuse its discretion in concluding that Pineda likely was to succeed on the merits of his FLSA and Massachusetts state law claims. As the court observed in addressing Pineda's motion for class certification, several workers have testified to the Reporting Policy, <u>Pineda III</u>, 2019 WL 3754015, at *1-2, and Skinner has produced no corroborated evidence to the contrary, <u>id.</u> at *7 (regarding defendants' testimonies that no Reporting Policy existed, "defendants have not produced any corroborating evidence . . . ."). The court has also acknowledged that the workers have proffered testimony concerning the involuntary nature of the Uniform Policy, <u>id.</u> at *3, and evidence showing that the primary investigator in the Wage and Hour Division of the Department of Labor concluded that Skinner violated certain sections of the FLSA, <u>id.</u> at *3.[7]

_____

[7] Skinner's argument that the workers have failed to show a likelihood of success on the merits because the workers did not file a summary judgment motion and have conceded that fact issues remain for the jury is misplaced. The argument conflates the

- 18 -

It likewise was not an abuse of discretion for the district court to conclude that Pineda would be irreparably harmed absent the preliminary relief. Although "[t]he possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury," this court has observed that "the story is quite different where there is a strong indication that the defendant may dissipate or conceal assets." See Micro Signal, 417 F.3d at 31. And the record here shows that, soon after Pineda filed suit, Skinner formed multiple companies closely associated with Skinner Demolition, which Pineda alleges were created to dissipate assets. One of these companies transferred $10,000 per month to defendant David Skinner before dissolving. Another provided services to Skinner Demolition that previously were provided by Skinner Demolition, and then was sold for $3.4 million. Shortly after this sale, Skinner reported to the court that it would suffer financial hardship if required to pay into escrow $46,165.17 -- approximately one percent of the sale price -- to satisfy the district court's contempt order. The court could reasonably take into account the dubious nature of the argument. Moreover, Pineda proffered additional evidence that

standards for summary judgment and a preliminary injunction. Compare Charlesbank, 370 F.3d at 162 (likelihood of success on the merits); with Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 70 (1st Cir. 2011) (no genuine dispute of material fact warranting judgment as a matter of law).

"Skinner [Demolition] may have plans to declare bankruptcy and form a new company because of this lawsuit" and has considered transferring its assets to avoid paying a judgment to the laborers. The district court was well within its discretion to conclude that there was a likelihood that Skinner was taking steps to conceal or dissipate its assets.[8]

Nor did the district court abuse its discretion in not requiring the laborers, who are low-wage workers, to post a million-dollar bond pursuant to Fed. R. Civ. P. 65(c). The bond requirement is not jurisdictional, see Aoude v. Mobil Oil Corp., 862 F.2d 890, 895-96 (1st Cir. 1988), and Skinner has failed to show how it has been harmed without the bond, see Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003). See also Int'l Assoc. of Machinists and Aerospace Workers v. E. Airlines, 925 F.2d 6, 9 (1st Cir. 1991) (finding "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond."). To the contrary, Skinner has represented that "Skinner Demolition is a significant ongoing concern with $7-8

---

[8] Skinner's argument that the accounting provision constitutes an abuse of discretion because it is a mandatory preliminary injunction subject to a heightened standard also falls short. The "affirmative" act of submitting an accounting to the court is de minimus and used only to maintain the status quo. See Braintree Lab'ys, 622 F.3d at 40-41 (applying a heightened standard for mandatory preliminary injunctions because they "alter[] rather than preserve[] the status quo.").

million dollars in gross annual revenues," and that any judgment against it "would only represent a fraction of Skinner Demolition's worth." Further, the district court had tailored the injunction and conditioned the attachment so that they caused no demonstrative damage to Skinner. See Pineda IV, 2019 WL 8262655, at *2-3.

Skinner finally argues, unsuccessfully, that the district court lacked jurisdiction to enter any injunction as it did here due to the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 107 and 113 (the "Act"). Whether or not the premise is correct that the Act's anti-injunction language would prevent the entry of a state law preliminary injunction, it is clear the Act has no applicability here.

The Norris-LaGuardia Act governs injunctions in cases "involving or growing out of a labor dispute," 29 U.S.C. § 107, and not actions for unpaid wages under the FLSA. The Act defines "labor disputes" to include "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." Id. § 113(c). By contrast, the FLSA protects the statutory -- rather than contractual -- rights of individual workers to guaranteed compensation for all work performed. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 741 (1981); see also 29 C.F.R. § 785.7 (requiring that employees covered by the

- 21 -

FLSA be paid for "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place").

While no circuit court has addressed directly whether a claim for unpaid wages under the FLSA constitutes a "labor dispute" as defined by the Norris-LaGuardia Act, in these circumstances, we agree with the district courts that have rejected such arguments. See, e.g., Mitchell v. Barbee Lumber Co., 35 F.R.D. 544, 547 (S.D. Miss. 1964); Bowe v. Judson C. Burns, Inc., 46 F. Supp. 745, 746–47 (E.D. Pa. 1942); see also In re Piccinini, 35 F.R.D. 548, 550–51 (W.D. Pa 1964) ("The [statutory] responsibility of an employer to . . . pay minimum wages, or to pay proper overtime wages to employees properly entitled under the [FLSA] is not related to employer-employee negotiations or their disputes.").[9]

We hold the strictures of the Norris-LaGuardia Act do not govern the subject preliminary injunction issued against an employer in this case for unpaid wages.  The district court had federal question jurisdiction over this case pursuant to 28 U.S.C.

_____

[9]    Also relevant, several courts have entered preliminary injunctions in FLSA actions without mention of the Norris-LaGuardia Act.  See, e.g., Mullins v. City of New York, 626 F.3d 47, 53–56 (2d Cir. 2010); Scalia v. Unforgettable Coatings, Inc., 455 F. Supp. 3d 987, 993–94 (D. Nev. 2020); Acosta v. Austin Elec. Servs. LLC, 322 F. Supp. 3d 951, 955–62 (D. Ariz. 2018); see also Haitayan v. 7-Eleven, Inc., 762 F. App'x 393, 395 (9th Cir. 2019) (unpublished) (vacating the denial of preliminary injunctive relief in an FLSA action).

- 22 -

§ 1331 and could enter injunctive relief under Rule 64 and Massachusetts law without first holding an evidentiary hearing.

**III. Conclusion**

<u>Affirmed</u>. Costs are awarded to the Pineda parties.